——o——

| 64 | 89 |
| 102 | 92 |

| 64 | 89 |
| f152 | 519 |
| 152 | 520 |

| 64 | 89 |
| 167 | 243 |

STATE OF MISSOURI, *ex rel.* ATTORNEY GENERAL, Relator, *vs.* ABRAHAM J. SEAY, Respondent.

1. *Circuit court—Judge of, who may be de facto—Claimant not declared to be usurp-er in quo warranto, when.*—Where it appears that during the entire term of office one claims to be judge of a circuit court, and acts as such, with the ac-quiescence of the people of the circuit, he is judge *de facto* and cannot be de-clared an intruder and usurper in *quo warranto.*

2. *Quo warranto—Allegations as to abandonment of office—What necessary, and what insufficient.*—In *quo warranto* for usurping the office of judge, a general assertion that defendant abandoned the office and engaged in the practice of law is insufficient. The special facts showing his abandonment must be stated. And his practice of law does not in itself, of necessity, amount to an abandon-ment.

3. *Office of judge, vacancy in—Authority of governor to fill not judicial, but subject to review by the courts.*—Where one was chosen judge under a special election ordered by the governor, his action in directing the election to be

held may be reviewed and its legality determined in a proceeding in *quo warranto*. The authority conferred on the governor by the Constitution of 1865 (art. 5, § 14) to fill a vacancy, confers no judicial authority.

4. *Office of judge—Term, continuance of till his "successor" is "elected and qualified"—"Vacancy"—Meaning of terms under Constitution of 1865—Death of judge elected and qualified, before commencement of his term—Right of predecessor to hold over in case of.*—In November 1868, A. was elected judge of the —th judicial court. Under the Constitution of 1865 (art. 6, § 14) his term continued till the first Monday in January, 1875, and till his "successor" was "elected and qualified." In November, 1874, B. was elected as his successor, and was commissioned and took and subscribed his oath of office, and was shown to be of requisite age, and otherwise answering the requirements of law. On January 2d, 1875, two days before the commencement of his term, he died. Section 14, *supra*, authorized the governor, in case "any vacancy" should happen by death, etc., to order a new election. *Held,* that B. was qualified as the successor of A. within the meaning of the late constitution. And when so qualified, the right of A. to hold over ceased, and did not revive with his death; that consequently the death of B. created a vacancy, which, under § 14, *supra*, authorized the election of a new judge.

5. *Offices, public, vacancy in—Function of courts and legislature touching.*—The law abhors vacancies in public offices, and in doubtful cases the construction of a law fixing the tenure of such office would be greatly influenced by that consideration. But where there is clearly a *casus omissus,* the courts must leave it to the law-making power to make provision to avoid such consequence.

## *Quo Warranto.*

*C. M. Napton,* for Relator.

I. The relator insists that there existed no vacancy on the 5th of March, 1875, in said office, and as the governor could order an election only in case of a vacancy, the election of defendant was a nullity.

The Constitution of 1865, Art. 6, § 14, provides that circuit judges " shall be elected for the term of six years, but may continue in office until their successors shall be elected and qualified." The six years for which Gale was elected expired, but as there was no one to succeed Gale he held over, and being rightfully judge at the time the governor ordered an election, the office was not vacant, but filled, by one lawfully authorized to exercise its functions. (See State vs. Lusk, 18 Mo. 333.)

McCord died January 2d, two days before the expiration of the six years for which Gale was elected—Gale was certainly judge then. So was he on the first Monday of January, 1875, and during the month for that matter, because McCord had died before entering and being inducted into the office, before his term would have begun. This left Gale judge *de facto* and *de jure*, and he held the office by a full and complete title at the time when the governor ordered an election. (See also, Comm. vs. Hanly, 9 Barr, 517 [Penn. St.] ; State vs. McNeely, 24 La. An. 19.) The death of McCord before January 4, 1875, places the case in the same position as though there had been no election in November, 1874.

Before the court can decide that Seay was legally elected, it must be guilty of deciding that an office is vacant while it is filled ; that there can be a vacancy in an office when there is a person in possession, whom all acknowledge to be rightfully in possession, having a perfect right to exercise all the powers and duties of the office, and to receive and enjoy all its emoluments. The mere enunciation of this shows that it would be a legal absurdity. (See 9 Barr [Penn. St.], 513 ; People vs. Tilton, 37 Cal. 614 ; 18 Mo. 333 ; People vs. Whitman, 10 Cal. 46 ; 38 Mo. 193.) That there was no vacancy ; see further, People vs. Lord, 9 Mich. 231 ; State, etc. vs. Ralls County Court, 45 Mo. 58 ; People vs. Forquer, Breese [Ill.], 104 ; Pappan vs. Gray, 9 Paige, 507 ; People vs. Van Horne, 18 Wend. 515 ; State vs. McCallister, 11 Ohio, 51 ; Stewart vs. State, 4 Ind. 396 ; Miller vs. Burger, 2 Ind. 337 ; Swails vs. State, 4 Ind. 516.

The respondent claims that the death of McCord left a vacancy which Gale might, by law, fill until the governor ordered an election, and until the person elected thereat came to take the office.

This would allow the anomaly of " graded vacancies "—vacancies that do not vacate. To speak of Gale's occupying a vacancy until some one came along to occupy it *because it is a vacancy*, is absurd. The very moment it is admitted that Gale might, by law, occupy this vacancy, its vacuity ceased, and the governor's power to appoint or order an election did not attach.

The law, in view of the California, Michigan, Missouri and Pennsylvania cases, undoubtedly means that Gale should hold the office not only during the six year term, but after that and until an elected and qualified successor "presented himself" to take the office. On the day McCord's term was to have begun, he was not an elected and qualified successor. He had been elected and had qualified, but no one can be a successor until he succeeds. Gale was entitled to sit as judge on the 1st Monday of January, because the person elected to succeed was then dead, and the law intended to cover this very case and prevent a vacancy by allowing the incumbent to hold over.

II. Defendant has not denied enough to avail himself anything, as he admits that Gale was a candidate for the office in 1868, took charge of it the first Monday of January, 1869, and served six years. Gale was therefore *de facto* judge during that time. The governor, the attorney general and the people, as well as his opposing candidate at the election of 1868, all acquiesced in his holding the office, and that is sufficient to make him *de facto* judge. (45 Miss. 151.)

The governor cannot by any act of his oust a *de facto* judge who holds the office. The law points out the remedy. (See opinion of Judge Wagner, in State *ex rel.* Vail vs. Draper, 48 Mo. 213.) And therefore, the governor could not oust Gale by ordering this election, under which Seay claims the office. So that, whether we admit or not that Gale was never elected to this office, it is immaterial, and therefore this part of the answer is insufficient.

But there is another ground for ousting the defendant, which goes to show that Seay is not entitled to this office, even if there were a vacancy, and if Gale had never held the office at all; that is, that there was no authority for the special election ordered by the governor in March, 1875. The term of office of a circuit judge is six years. The Constitution of 1865, Art. 6, § 14, provides, that "if any vacancy shall happen in the office of any circuit judge, the governor shall, upon being satisfied that a vacancy exists, issue a writ of election to fill such vacancy ; *provided*, that said vacancy shall happen at least six months before the next gen-

eral election for such judge." And further on in the same section: "And the General Assembly shall provide by law, for the election of said judges in their respective circuits, to fill any vacancy which shall occur at any time, at least six months before a general election for said judges." Now the General Assembly has made such a provision, and it is as follows: "In all cases of vacancy in any office the length of the term of which is over two years, the vacancy shall be filled by the election of some person to the office at the first general election after such office becomes vacant." (Sess. Acts 1873, p. 43, approved March 13, 1873.) The length of this term is over two years, and the supposed vacancy occurred January 4, 1875, being more than six months before November, 1880, when the next general election for circuit judges occurs, and the next general election after January 4, 1875, is in November, 1876. Therefore, there can be no election of circuit judge to fill this supposed vacancy until November, 1876.

Neither could the governor appoint, to fill this vacancy, as the Constitution, Art. 6, sec. 14, says: "But if such vacancy shall happen within six months of the general election for circuit judges, the governor shall appoint a judge for such circuit." Thus showing that the governor can appoint only when the vacancy happens within six months of the next general election for circuit judges, and as this happens in 1880, there would thus be left no power of appointment.

It is alleged that Gale abandoned the office. But there is no allegation of an intent to abandon, and there can be no abandonment without an intention to abandon. (State vs. Pritchard, Am. Law Reg., Aug. 1873, p. 514; 7 Vroom, 101; 39 Tex. 1.)

It is further charged that Gale had commenced the practice of law in the Ninth Circuit—(the defendant at the same time claiming that the office was vacant, and there was no court to practice before.) As the law does not allow circuit judges to practice, this is simply a charge of malfeasance or misfeasance in office.

*Lay & Belch, with John W. Booth,* for Respondent.

I. The allegation of abandonment by Gale standing admitted by the demurrer, of itself shows a vacancy. The respondent, being elected and commissioned to fill that vacancy, takes possession, and continues to execute the functions of the office. Gale, the person alleged to have abandoned the office, has not come forward at any time and set up title to the office. (See State *ex rel.* &c. vs. Draper, 45 Mo. 355 ; State *ex rel.* &c. vs. Lusk, 48 Mo. 242.)

II. The governor, and what is the same, the people, declared there was a vacancy, and in this proceeding, where no private rights are involved, the people of the State are estopped from denying respondent's right. (Commonwealth vs. The Pejepscut props., 10 Mass. 155 ; Commonwealth vs. Heirs of Andre, 3 Pick. 224 ; Opinion of court in response to Governor, 49 Mo. 316.)

III. But by the constitution, article 5, § 14, "the governor shall, upon being satisfied that a vacancy exists, issue a writ of election to fill such vacancy." Could language more plainly confer the power of determining the question, did a vacancy exist? We think not.

And the officer in whom the constitution confided the power of judging has passed judgment. Had he declined to act, no court could have compelled him to do ·so (State *ex rel.* Bartley vs. Governor, 39 Mo. 388), and having acted, no court can review or reverse his action. (Martin vs. Matt, 12 Wheat 19, see p. 31 ; Vandeyheyden vs. Young, 11 Johns. 150, see p. 157 ; Commonwealth vs. Baxter, 35 Penn. St., 263 ; State vs. Adams, 2 Stew. [Ala.] 23 ; Britton vs. Stebers. 62 Mo. 870 ; State *ex rel.* Robinson vs. County Court of New Madrid, 51 Mo. 82 ; State *ex rel.* Brooks vs. Baxter, 28 Ark. 129 ; Tappan vs. Gray, 7 Hill. 259.) At all events, every reasonable presumption is in favor of the regularity and legality of his acts. (State *ex rel.* vs. Wrot Nowski, 17 La. 156 ; Bank U. S. vs. Dandridge, 12 Wheat. 70 ; State *ex rel.* Leal vs. Jones, 19 Kerr. 356 ; Cool. Const. Lim. p. 69.)

IV. Gale was not *de facto* a judge. An officer *de facto*, as between the government and himself, is one who comes in office by the forms of an election or appointment. The mere performance of official duties does not constitute him such an officer. There must be color of right by election or appointment, or an acquiescence on the part of the public for such a length of time as to raise a strong presumption of colorable right. (State *ex rel.* Cornwall vs. Allen, 21 Ind. 516 ; Kerr vs. Jones, 19 Ind. 351 ; Ang. & Ames Corp. 465 ; 1 Dill. Mun. Corp. [2 ed.] § 167 ; State *ex rel.* Leal vs. Jones, 19 Ind. 356.)

V. The death of McCord caused the office of judge of the ninth judicial circuit to become vacant, under a proper and natural construction of section 14 of art. 6, of the constitution of 1865.

VI. The cases which show that the office is, under certain circumstances, filled to a special intent only, and vacant to another special intent, and that the term of office is not extended under the circumstances to one so specially permitted to remain in office, are as follows : to-wit : (Chelmsford Co. vs. Demarest, 7 Gray, 1 ; State vs. Hopkins, 10 Ohio St. 509 ; 17 Wis. s. p. 658 ; People vs. Langdon, 8 Cal. 1 ; People vs. Addison, 10 Cal. 1 ; People vs. Reed, 6 Cal. 288, lead cas. ; Brooks vs. Melony, 15 Cal. 221 ; People vs. Stratton, 28 Cal. 282 ; State vs. Wotnowski, 17 La. Ann. 156 ; Riddell vs. School District, 15 Kas. 16S ; Wapello vs. Bingham, 10 Iowa, 39.)

(Counsel here reviewed the cases of People vs. Snedeke, 14 N. Y. 52 ; People vs. Fischer, 24 Wend, 215 ; People vs. Lord, 9 Mich. 227 ; Comm. vs. Hawley, 9 Pa. 513 ; State vs. Lusk, 18 Mo. 333 ; People vs. Tilton, 37 Cal. 614, and others, and contended that, properly understood, they were not adverse to respondent.)

HENRY, Judge, delivered the opinion of the court.

This is a proceeding by the State, through the attorney general, to try the right of the defendant to the office of judge of the ninth judicial circuit.

In November, 1868, D. Q. Gale and one Peter B. McCord were candidates for judge of the ninth judicial circuit. On the

first Monday in January, 1869, Gale entered upon the discharge of the duties of the office, and continued to discharge them until the expiration of the term of office commencing on that day. In November, 1874, Peter B. McCord was duly elected to succeed Gale, received his commission from the governor, and in December, 1874, took and subscribed the oath of office. On the 2d day of January, 1875, before his term of office commenced, he departed this life. The governor issued a writ for an election to be held the 3d day of March, 1875, to fill the vacancy which, in his judgment, the death of McCord had occasioned, and respondent, at that election received a majority of the votes cast, was commissioned and qualified, and entered upon the discharge of the duties of the office.

These are the facts which appear of record, and about which there is no controversy. The relator in his information alleges that said Gale, for his first term, was duly elected, commissioned and qualified.

The respondent in his answer denies that Gale was elected or commissioned, or that he took the oath of office ; and alleges that he was an intruder and a usurper, and that his usurpation commenced on the first Monday of January, 1869, and continued to the first Monday of January, 1875 ; admits that there was an election in November, 1868, and that Gale and McCord were candidates, but alleges that McCord was then duly elected. He also charges in his answer, that at the date of the writ of election, "a vacancy in fact existed and that said Gale did not in fact perform nor claim to perform, nor assume to perform, nor claim the right to perform the duties of said office ; but on the contrary had wholly given up and abandoned said office, and had engaged in the practice of law, as an attorney-at-law, in the several circuit courts of the said ninth judicial district.

To respondent's answer the relator filed a demurrer, and respondent contends that by the demurrer it is admitted that Gale usurped, and also that at the date of the writ of election he had abandoned the office.

The facts alleged and relied upon in support of the allegation, that Gale *was,* conclusively show that he was not, a usurper.

Those facts are, as alleged by defendant, that he entered upon the discharge of the duties of the office on the first Monday in January, 1869, without having been duly elected, commissioned or qualified, and for six years—the entire term—was the acting judge of that judicial circuit. An acquiescence for such a length of time in his claim to be judge of the circuit, and in his acting as such, by the people of that circuit, the attorney general and his competitor, McCord, made him a judge *de facto*, and precludes us in this case from declaring that he was an intruder and a usurper.

With regard to the averment that Gale had abandoned the office, without determining whether there can be an abandonment of an office in this State, otherwise than by resignation, removal, or some other act which the statutes may provide shall vacate an office, we are satisfied that more particularity is required in pleading abandonment than has been observed by the respondent in this case. A circuit judge cannot abandon his office by saying he abandons it, or merely by neglecting to attend to his duties as judge. What amounts to an abandonment of an office (if one can be vacated by abandonment, otherwise than in the manner prescribed by the statute), is a question of law, and the special facts should be stated, in order that the court may determine whether those facts constitute an abandonment or not.

In immediate connection with the averment of abandonment, it is alleged that "Gale engaged in the practice of his profession" in the counties composing the ninth judicial circuit. If this be stated as the fact relied upon by respondent to show an abandonment it is not sufficient. A circuit judge may practice law, and while by so doing he violates the law and subjects himself to indictment and impeachment, he does not vacate or abandon his office any more than any other conduct, violative of his oath "faithfully to demean himself in his office," would vacate or amount to an abandonment of his office.

It is insisted by respondent that this court cannot review the action of the governor in issuing a writ for a special election to fill a vacancy in office which he may determine has occurred, and

7—VOL. LXIV.

he bases his denial of the jurisdiction of the court on the 14th section of the 5th article of the Constitution of 1865, which provides that "the governor shall, upon being satisfied that a vacancy exists, issue a writ of election to fill such vacancy."

The division of the powers of the government into three distinct departments, each to be confided to a separate magistracy, is to be found in the State constitution of every State in the Union, and in nearly, if not all of them, power is given the governor to fill vacancies which occur in office.

The power to fill a vacancy implies the right of the officer to whom it is given to determine when a vacancy exists, if the right to determine that question is not bestowed elsewhere, and the 14th section confers no greater authority upon the governor in this respect than is given him in the power conferred to fill a vacancy.

If the power to fill a vacancy did not carry with it authority to determine when a vacancy exists, and that authority is not given to some person or tribunal, a vacancy could not be filled, and the section would be nugatory. Hence, that provision of the constitution that "the governor, upon being satisfied that a vacancy exists, shall issue a writ of election, etc.," confers no judicial authority, but merely for convenience authorizes him to determine that question, because the public service might suffer if a vacancy could not be filled until after a judicial investigation be had. He determines it upon *ex parte* testimony or information that is not technically testimony at all, and surely it was not intended that the rights of incumbents were to be conclusively determined by the governor, by the discharge of the duty imposed upon him by that section.

Nearly every authority cited in the briefs filed by the attorneys in this case, was one in which, on the relation of some officer or citizen, the act of a governor in filling a vacancy was reviewed by the court, and in nearly all of the State constitutions the provision conferring power upon the governor to fill a vacancy is substantially the same as that in our State constitution.

In many of those cases it was determined that the acts of the governors were illegal, and by the judgments of the courts their

appointees were ousted.   The case of the State vs. Lusk (18 Mo. 333) was a case in which the jurisdiction of the court denied here was exercised.   The doctrine contended for by respondent would prostrate the other departments of the government, and make the chief executive supreme over them.   He would have but to declare a vacancy in every judicial circuit in the State to remove all the incumbents, and supply their places with men of his own choice.   The doctrine so strenuously contended for by respondent is equally in conflict with reason and authority.

Having disposed of these preliminary questions, we come now to the main question in this case : Was there a vacancy in the office of judge of the ninth judicial district on the first Monday in January, 1875 ?   If there was, the demurrer must be overruled and judgment rendered for defendant.

In November, 1874, McCord was elected.   In December following he received his commission, and took and subscribed the prescribed oath of office, and on the 2d day of January, two days before the term for which he was elected commenced, he departed this life.   The Constitution of 1865, art. 6, § 14, provides that the circuit judges "shall be elected for the term of six years, but may continue in office until their successors shall be elected and qualified."   The same section also provides that "if any vacancy shall happen in the office of any circuit judge by death, resignation, removal out of his circuit, or by any disqualification, the governor shall, upon being satisfied that a vacancy exists, issue a writ of election to fill such vacancy."

We are referred to the case of the State vs. Lusk (*supra*) as an authority in support of the position that the death of McCord before his term commenced created no vacancy.   On the 24th day of March, 1845, the General Assembly passed an act establishing the office of public printer, and provided that "a public printer shall be elected at the present session of the General Assembly, and at every regular session thereafter, by joint vote of the two houses;" that he should hold his office for "two years, commencing on the first of May next thereafter, and until his successor shall be elected and qualified; and that public printers thereafter elected shall hold office for two years, and

until their successors shall be elected and qualified.'' The 6th section provided that ''if the public printer should die or resign, or if from any other cause the office should become vacant, the governor shall appoint a public printer, who shall give bond and qualify, and shall hold his office for the same time that the printer in whose stead he shall be appointed would have held.''

On the 4th day of February, 1851, James Lusk was duly elected public printer, and thereupon gave bond and qualified. The general assembly, which convened in December, 1852, failed to elect a successor, and in May, 1853, the governor appointed John G. Treadway. It was insisted that the failure of the general assembly to elect created a vacancy which the governor could fill by appointment, but this court in that case held otherwise.

In the case at bar there was an election. The successful candidate, McCord, received his commission and took the oath of office. The limit of Gale's term of office fixed by the constitution was six years from the first Monday in January, 1869, if a successor should be duly elected and qualified. His successor was duly elected and qualified. There was no one elected by the General Assembly to succeed Lusk, and this makes a material and vital difference between the two cases, and without overruling that, we may, in this case, determine that there was a vacancy created by the death of McCord.

The case of the Commonwealth vs. Hanley (9 Barr, 513) is in many of its features similar to this, and is confidently relied upon by relator. Hanley was elected clerk of the orphan's court on the second Tuesday in October, 1845, for three years from the first day of December, 1845, ''and until a successor should be duly qualified.'' He qualified and entered upon the discharge of the duties of the office. On the second Tuesday in October, 1848, one Brooks was elected to succeed Hanley, but died on the 7th day of November following, within thirty days from the day of election, and by the law of that State he could not have qualified to fill the office by taking the necessary oath, or by giving bond within thirty days from the day of election.

The opinion of the court was delivered by Rogers, J., and we quote from that opinion so much as we think bears upon the questions discussed in this case. ''Was there a successor duly quali-

OCTOBER TERM. 1876.                    101

State ex rel. Att'y Gen'l v. Seay.

fied within the spirit of the Constitution? is the point on which the question mainly if not entirely depends. Being duly qualified in the constitutional sense, and in the ordinary acceptation of the words, unquestionably means that the successor shall possess every qualification; that he shall in all respects comply with every requisite, before entering on the duties of the office; that in addition to being elected by the qualified electors he shall be commissioned by the governor, give bond as required by law, and that he shall be bound by oath or affirmation to support the constitution of the commonwealth, and to perform the duties. of the office with fidelity. Until all these pre-requisites are complied with by his successor (for if you can dispense with one you can dispense with all) the respondent is *de jure* as well as *de facto* the clerk of the orphan's. court."

The words are emphatic and full of meaning. The successor must not only be qualified, but duly qualified; and qualification for office, as defined by the most approved lexicographer, is "endowment, or accomplishment that fits for an office; having the legal requisites, endowed with qualities fit or suitable for the purpose."

If McCord had died after his election and before he received his commission and qualified, Commonwealth vs. Hanley would be an authority direct to the point that his death created no vacancy, and we infer from the opinion of the court, that if in that case Brooks had duly qualified and died before the commencement of the term for which he was elected, the court would have held that his death created a vacancy. Here it is admitted that McCord was duly elected and commissioned, took and subscribed the prescribed oath, was thirty years of age, learned in the law, and resident in the ninth judicial circuit, and was therefore, at his death "duly qualified," as those words are expounded by the learned judge in Commonwealth vs. Hanley.

By the law of Pennsylvania, Brooks was not permitted to give his official bond or take the oath of office within thirty days after his election, but by § 2, art. 1, ch. 4, Wagn. Stat., it is provided that "each judge or justice shall, within thirty days after the receipt of his commission, and before entering upon the du-

ties of his office, take the oath of loyalty prescribed by the Constitution of the State, and that he will faithfully demean himself in office." So that taking of the oath of office by McCord was not premature, but was taken in compliance with the law.

There is such a conflict between the California cases which have been cited, that they are of but little authority on either side of the question. The earlier cases sustain defendant's view. They are, however overruled, in two cases more recently decided, but by a divided court, the dissenting judges adhering to the doctrine of the former cases.

We have been referred to cases in New York and elsewhere, in which are observations to the effect that an office cannot be considered vacant while there is an incumbent legally in office, and discharging the duties of the office, but this we do not controvert, and it only brings us back to the question, was there an incumbent of the office of judge of the ninth judicial circuit when the governor issued his writ of election ? If there was, there was no vacancy, and those cases would be in point ; but the very question we are discussing is, whether there was then an incumbent, and this turns on the meaning of the word *qualified*, as used in our constitution of 1865.

The case of the State vs. Hopkins (10 Ohio, 509) is so like the case we are considering in its facts, and so directly sustains the position of the respondent on the main question in this case, that we feel inclined to state fully the facts of the case, and the opinion of the court so far as it bears upon that question. By the statute of that State the county commissioners were expressly authorized by statute to appoint a county treasurer, whenever that office became vacant "by death, resignation, removal, neglect to give bond, or from any other cause." At the fall election of 1857 one Hopkins was re-elected county treasurer, and on the first Monday of June, 1858, having been duly qualified, entered upon his second term of office. At the regular election in the fall of 1859, Matthias Rapp was duly elected to succeed Hopkins. Afterwards, in 1859, the governor issued to said Rapp a commission as county treasurer, which was transmitted to the county clerk. On the 27th day of November, 1859, before the com-

mencement of his term, said Rapp deceased, having never, in fact, received his commission. On the first Monday of September, 1860, the day on which the term for which Rapp was elected commenced, the county commissioners appointed William Adams to fill the vacancy occasioned by the death of Rapp. Adams qualified and Hopkins refused to yield possession of the office.

The principal question in that case, as in this, was, whether the death of the officer elect, before his term of office commenced, occasioned a vacancy. The court in that case says : "By reason of the death of Matthias Rapp, prior to the commencement of the term for which he had been elected, there was no person, on the first Monday of September, 1860, entitled to take and hold the office during the regular statutory term commencing on that day. And this want of a regular incumbent for the term occasioned by the death of a party who would otherwise have been such, constitutes, as we think, a vacancy occasioned by death, within the meaning of the statute. And were it necessary, we should hold that under the statute last cited, the office became vacant upon the failure of Rapp to give bond and take the oath of office. True, this failure was caused by the act of God, and not by the laches of the party, but its effect upon the office is the same, whatever may have been the cause.

"This construction makes the legislative intention accord with the constitutional policy, by which no person is 'eligible to the office of county treasurer for more than four in any period of six years.' "

The last paragraph of the opinion we quote, because it is urged that the court was controlled by this constitutional provision in its conclusion that there was a vacancy. The court, on the contrary, says with emphasis, that the vacancy was occasioned by death, and there is no intimation in the opinion that the constitutional provision, which is only incidentally referred to, in any manner influenced the conclusion which the court arrived at in that case.

If the death of Rapp occasioned a vacancy in that, no one would contend that McCord's death did not occasion a vacancy in this case. Rapp had not received his commission, had not

given his official bond, had not taken the oath of office, had done nothing but announce himself a candidate, and received a majority of the votes cast, while McCord had done all that was required of him by the law, and within the time prescribed by the statute.

The People vs. Lord (9 Mich. 227) is another relied upon by relator, as expounding the meaning of the word *qualification*, in favor of the view taken by him.

The Constitution of Michigan, under which that case was determined, provides "that a judge of probate shall hold his office for four years, and until his successor is elected and qualified." In 1860, North, then in office, was re-elected of his own successor, for the term commencing January 1, 1861. He died November 22, 1860. Van Valkenburg was appointed by the governor to fill the vacancy, which in his judgment had occurred. On the first of January, 1861, under the impression that the time for which the first appointee, Van Valkenburg, was appointed, ended at the expiry of North's first term, the governor appointed Henry Lord for the next term. It will be observed that North died in November, 1860, before the commencement of his second term. It does not appear that after his election he was otherwise qualified under the law of that State.

The case presents the same material difference from this case that we have noticed as distinguishing the case of the State vs. Hopkins (10 Ohio, 509) and the Commonwealth vs. Hanley (9 Barr, 517), from the case at bar.

In the opinion of the court in The People vs. Lord, the court says : "His (Van Valkenburg's) term of office did not expire on the 1st of January, 1861, unless some one elected and qualified was then ready to take the office." We submit that the language of the court extends the term beyond the time fixed by the express words of the Constitution of Pennsylvania. The constitutional limit was, "until a successor is elected and qualified," but the court adds, "and ready to take the office." The construction of the word *qualified* was not directly before the court. There had not been an election, and that, under the law of Michigan, was decisive of the question. There was no question about the quali-

fication or what amounted to qualification of one elected, for no one had been elected. We cannot, therefore regard it as a direct authority on the question, but if it were, we think that the weight of authority is against it. The law abhors vacancies in public offices, and great precautions are taken to guard against their occurrence. The policy of the law is to have some one always in place to discharge the duties of public offices, and in a doubtful case the construction of a law fixing the tenure of an office would be greatly influenced by that consideration; but where, as in this case, there is a *casus omissus* resulting from giving the language of the law the only construction of which it is fairly susceptible, the courts must leave it to the law-making power to make provisions to avoid such a consequence.

By the term of the Constitution, Gale's term was to cease when a successor should be elected and qualified. His successor, McCord, was duly elected and duly qualified, and when that occurred Gale's right to hold over ceased, and the death of that successor, before his term commenced, did not revive a right in Gale which ceased when McCord qualified.

With the concurrence of the other judges, the demurrer is overruled, and judgment for respondent, Seay.