Strafford,  }
July 28, 1904. }

### ATTORNEY-GENERAL (*ex rel.* ANDREWS) *v.* REMICK.

The nature and extent of the authority of a mayor as presiding officer of a city council are to be determined by such principles of parliamentary usage as are generally observed in deliberative assemblies, in the absence of rules of procedure adopted by the council and statutory provisions upon the subject.

The presiding officer of a legislative assembly has no right to declare an adjournment without the consent of a majority of the members, on the ground of disorder, unless he has exhausted all his legitimate powers for preserving order, and the transaction of business is impossible or impracticable under the circumstances.

If a meeting of a city council is illegally declared adjourned by the presiding officer, who then withdraws, a quorum of the members may elect a chairman and temporary clerk, and proceed with such business as it is competent for them to transact.

Where a municipal charter empowers the city council to elect the city clerk and remove him at pleasure, a vote declaring a vacancy in that office operates as a removal of the incumbent, if such was the apparent intention.

A city council's vote to proceed to the election of a city clerk is not open to parliamentary objection, on the ground that a veto of a similar proposition at the same meeting was acquiesced in and that a second motion of the same import was declared out of order, when it appears that a vote removing the incumbent of that office intervened and that a vacancy was thereby created.

The fact that the person chosen as temporary clerk of a city council was not sworn does not invalidate the proceedings of the meeting.

INFORMATION, in the nature of a *quo warranto*, to determine the defendant's title to the office of city clerk of Somersworth. Facts found by the superior court at the February term, 1904, and questions of law arising thereon transferred by *Pike*, J.

The defendant was duly elected city clerk on the third Tuesday of March, 1903, and having qualified therefor, entered upon the performance of the duties of the office. On the third Tuesday of March, 1904, the city council failed to elect a city clerk to succeed the defendant. At a regular meeting of the council held March 22, 1904, it was voted to proceed to elect a city clerk. The mayor vetoed the vote, and no further action was taken in regard to the matter at that time. The meeting adjourned to March 25, when the same vote was passed and vetoed by the mayor. After a motion to adjourn was defeated, a councilman again moved to proceed to the election of a city clerk. The mayor ruled the motion out of order, and no appeal was taken therefrom. A motion to adjourn was again defeated, and another motion was then made to proceed to the election of a city clerk. The mayor refused to put the question, and a councilman thereupon attempted to do so, six councilmen voting in the affirmative, and the other four not voting. The councilman putting the motion was called to order by the mayor two or three times. The mayor then vacated the chair and left the room, accompanied by four of the councilmen and the clerk, and did not return again that day. As he left the platform he said, " This meeting is adjourned." The six councilmen remaining, after electing a chairman and temporary clerk, voted " that the office of city clerk be and hereby is declared vacant." Thereupon they voted to proceed to the election of a city clerk, and elected Andrews to that office. No rules of procedure had been adopted by the council.

*Samuel W. Emery*, for the plaintiff.

*John S. H. Frink* and *William F. Russell*, for the defendant.

WALKER, J.   One of the powers conferred upon the mayor by the charter of the city of Somersworth is that of presiding "in the meetings of the city council."   Laws 1901, *c.* 209, *s.* 1.   The nature and extent of his authority as the presiding officer of the council, in the absence of rules of procedure adopted by the council and of statutory provisions upon the subject, can only be determined by such principles of parliamentary usage as have been generally adopted or observed in deliberative assemblies, and which are reasonably essential to the due execution of the legitimate business of the council.   *Hiss* v. *Bartlett*, 3 Gray 468, 475; Cush. Leg. Ass., *s.* 792; 1 Dill. Mun. Corp. (4th ed.), *s.* 288; Reed Parl. Rules, *ss.* 1, 56.   The presiding officer represents the assembly in determining and declaring its will upon matters properly before it.   If it has adopted rules of procedure which are legally unobjectionable, it is his duty to apply and enforce them.   If it has not enacted a code of rules, he is still bound by the legally expressed will of the assembly, ascertained from competent evidence.   His power is not ordinarily absolute and original, but qualified and derivative.   It is his duty to declare the will of the body over which he presides, ascertained by rules previously adopted, or, in the absence of such rules, by other methods not repugnant to the due and orderly procedure of a deliberative body. In the latter case it may happen that general parliamentary usage affords in the particular instance the only practical method of ascertaining and declaring the legislative purpose.   While it may be true that the city council of Somersworth is not bound by parliamentary law as recognized and applied in the state legislature or in congress (*Hill* v. *Goodwin*, 56 N. H. 441, 447, 453), it is nevertheless a legislative body; and its legislative acts, if valid, must be disclosed in a manner consistent with legislative procedure.   "It is important that the will of the lawmakers be clearly expressed, but it is also essential that it be expressed in due form of law."   Cool. Con. Lim. (7th ed.) 186.   If all the members should sign a writing declaring their assent to a proposed ordinance, without other formality, the ordinance would not be adopted, because no legislative action was taken; and the presiding officer could not ascertain the will of the board, and declare the same, from non-legislative evidence of that character, however conclusive such evidence might be of the individual wishes of the members.   It is obvious that at the meetings of March 22 and 25, the city council, including the mayor in his capacity of presiding officer, was not independent of all rules of procedure, or that its acts can be found to be legal if adopted through methods not reasonably adequate to the expression of the legislative will.

Whether the defendant has a legal title to the office of city

clerk, which is the question raised by this proceeding, depends upon the question, whether the relator was legally elected to that office at the meeting of the council of March 25. It is conceded that the defendant was duly elected city clerk in March, 1903, for one year, and that he thereupon legally assumed the duties of the office, which he has ever since performed. Nor is it contended that he was not authorized to perform the duties of the office after the failure of the city council to elect a clerk in March, 1904; for the charter provides that his " term of office shall continue for one year and until another shall be chosen and qualified to act in his stead, removable, however, at the pleasure of the city council." Laws 1901, c. 209, s. 5. It is plain, therefore, that he was the legal city clerk until the relator was declared elected on March 25. Up to that time no action had been taken affecting his official title.

The meeting of the council on that day was a legally adjourned meeting; but the position of the mayor and four of the councilmen was, that a successor to the defendant as clerk could not be elected at that meeting, while six of the councilmen took the opposite position. But it is unnecessary to decide this controversy, for before the mayor withdrew from the meeting no one had been elected city clerk in the place of the defendant. Upon the construction most favorable to the defendant, it had merely been determined not to proceed at that meeting with the election of a city clerk, under existing circumstances, and not to adjourn until some further business had been attempted. The office of city clerk was still filled by the defendant.

At this point in the proceedings, the mayor, without a motion being addressed to him to adjourn and without submitting the proposition to the council for their action, upon leaving the platform said, " This meeting is adjourned." That a presiding officer, who is merely the agency through which the assembly declares its will, does not ordinarily have the power of arbitrarily adjourning the meeting of his own motion, is a proposition which demands little, if any, discussion. While there is no statutory provision defining his duties in this respect, common parliamentary custom or law necessarily forbids such action on the part of a presiding officer of a legislative assembly. To uphold such procedure would be to sanction his usurpation of the undoubted rights and privileges of the assembly. Unless the assembly acquiesces in an arbitrary announcement of an adjournment by the chairman, it would seem to be difficult to sustain such action, except upon the ground that the attending circumstances were of a very extraordinary character. If it appeared that there was great turmoil and disorder, and that the members or a substantial part of them refused

to respond to the efforts of the chairman to preserve order, an adjournment might result as a necessary consequence of the situation; and the announcement of the chairman that the meeting was adjourned, without a motion being made for that purpose, might be deemed a valid exercise of his implied power. The occasion might be so urgent as to make such action necessary. Indeed, it has been said by a writer on parliamentary procedure: "Should the disorder become so great that business cannot be transacted, and the chairman cannot enforce order, as a last resort he can declare the assembly adjourned." Rob. Rules Ord., *s.* 40, note. An urgent necessity arising from the attendant circumstances would seem to be the only justification for such action, in the absence of statutory authority or special rules of procedure. Whether the disorder is so great that the assembly ceases to be a deliberative body and loses its ability to perform legislative functions, and whether the chairman is unable to preserve such a degree of order as is necessary for the transaction of legislative business, are principally questions of fact.

From the facts reported in this case it is apparent that there was some disorder at the meeting, and that the rightful authority of the mayor as the presiding officer was not respected by all the members. His attempt to call the member to order, who was assuming to act as chairman in putting a motion to a vote, was disregarded by the member, who, it is not improbable, thus became liable to discipline and censure. But however reprehensible and unparliamentary his conduct may have been, it does not appear that the mayor might not have preserved order and compelled the disorderly member to desist by such reasonable means as he had the power to employ—as, if necessary, by ordering his removal from the room. It does not appear that the mayor exhausted all his legitimate powers for preserving order before declaring the meeting adjourned, or that the meeting was in such a state of disorder and excitement that the transaction of business was impossible or impracticable. It does not appear, therefore, that the exigency had arisen which might have authorized him to exercise the extraordinary power of adjourning the meeting without the consent of a majority of the members, who had no opportunity to dissent, and who, therefore, did not acquiesce in the declaration of the mayor. It follows that the meeting was not legally adjourned when the mayor, clerk, and four of the members withdrew.

Under such circumstances it was competent for the remaining members, who constituted a quorum, to elect a chairman and a temporary clerk for that meeting, and to proceed with the transaction of such business as the council was authorized to transact. The vote declaring the office of city clerk vacant was legal.

The apparent purpose was to remove the incumbent; the members understood that the effect of passing that vote would be the removal of the defendant and the consequent creation of a vacancy. *Attorney-General* v. *Remick*, 71 N. H. 480, 483. If the vote had been to declare the office vacant by the removal of the defendant, the members would not have furnished clearer evidence of their intention than they did in the vote actually passed. If it is true that in a technical sense the declaration of the council declaring the office vacant did not create a vacancy if one in fact did not exist (*Harrison* v. *Simonds*, 44 Conn. 318; *People* v. *Van Horne*, 18 Wend. 515, 518; *Tappan* v. *Gray*, 9 Paige 506; *State* v. *Davis*, 45 N. J. Law 390; *Hedley* v. *Commissioners*, 4 Blackf. 116; *State* v. *Harrison*, 113 Ind. 434; *Doran* v. *DeLong*, 48 Mich. 552; *State* v. *Seay*, 64 Mo. 89; *Page* v. *Hardin*, 8 B. Mon. 648, 669; *People* v. *Osborne*, 7 Col. 605; *People* v. *Tilton*, 37 Cal. 614; Mech. Pub. Off., *ss.* 128, 129), still it may have had the effect of a removal, if such appears to have been the intention. When the body declaring a vacancy has also the power of removal at pleasure and the power of appointment, its action is susceptible of a broader construction than it is when it has merely the power of appointment in case of a vacancy, as in most of the cases above cited. The legislature has expressly authorized the city council of Somersworth to remove the city clerk at pleasure. Laws 1901, *c.* 209, *s.* 5. By section 2 it is provided that "all provisions of statutes pertaining to the duties of boards of aldermen and common councils of cities, separately or otherwise, shall be construed to apply to the board of council created by this act unless a different intention appears." As no "different intention" appears, section 4, chapter 50, Public Statutes, applies, which authorizes city councils to fill "all vacancies in any office to which they have power to elect." Having the undoubted power to remove the clerk and to fill the vacancy thus created, the question is whether the council has furnished competent evidence of a legislative intention to exercise those powers. If the vote declaring a vacancy did not operate as a removal of the defendant, it had no effect. But action of a deliberative body is not to be deemed ineffectual and useless, when by reasonable construction a lawful purpose is apparent and the language used is not necessarily inconsistent with the expression of such a purpose. "Thus, if by one construction an ordinance will be valid, and by another void, the courts will, if possible, adopt the former." 1 Dill. Mun. Corp., *s.* 420; *Lisbon* v. *Clark*, 18 N. H. 234, 238. The vote declaring the office of city clerk vacant was in effect a removal of the incumbent (*Williams* v. *Gloucester*, 148 Mass. 256, 260), and the vacancy thus created was properly filled by the election of the relator.

If it is argued that the council acquiesced in the mayor's veto of the vote to proceed to the election of a clerk in the early part of the meeting, or in his subsequent ruling that such a motion was out of order, and that for some parliamentary reason that proposition could not be again acted upon at that meeting, and if it is assumed, without deciding, that the argument is sound, the answer is that the removal of the defendant was a new proposition that had not been before presented to the meeting, and that upon its adoption a new situation had arisen with reference to the office of city clerk. The circumstances were materially different from what they were in the early part of the meeting. A vacancy had occurred by removal, as it might have occurred by the incumbent's death or resignation. Under such circumstances it cannot be doubted that the council was at liberty to proceed to elect a clerk to fill the vacancy, however created.

This result is based upon the theory that the proceedings of the council were properly recorded. The fact that the temporary clerk was not sworn does not render the proceedings void (1 Dill. Mun. Corp., s. 293), while no question seems to have been raised as to the competency of the evidence presented. Upon the facts reported the order is,

*Judgment of ouster.*

All concurred.