FELIX A. TOUPIN *et al. vs.* JOSEPH W. MARCEAU.

JULY 20, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

PER CURIAM. This is a petition in equity in the nature of *quo warranto*, brought under the provisions of general laws 1923, chapter 379, by Felix A. Toupin, Eugene L. Jalbert and Sarto A. R. Gadoury, all of Woonsocket, against Joseph W. Marceau of Woonsocket, to determine the petitioners' claim of right and title to the offices of police commissioners of the city of Woonsocket.

The respondent, at the time of the filing of the petition, was the acting police commissioner of said city, by virtue of an original interim appointment made by the governor under public laws 1926, chapter 923, and public laws 1929, chapter 1501, which gave to the governor authority to fill an existing vacancy in that office.

Charles M. McLaughlin and Wilfrid Rivet, both of said Woonsocket, also claim title to the same offices of police commissioners and, upon their joint motion, after the filing of this petition, were permitted to intervene as parties

thereto in order to determine their rights, if any, to said offices.

The respondent filed his appearance in the case and showed substantially, through the attorney general at the hearing, without objection of any kind, his said appointment to act as police commissioner until his successors were duly elected and qualified; his lack of personal interest in the outcome of the controversy, except to be legally relieved of his office; the claims and demands made upon him respectively by the petitioners and intervenors to turn over to them his office and records; and his offer to turn the same over to such of the claimants as might be declared by this court to be entitled thereto. The matter then proceeded to hearing after the manner followed in a case of a bill of interpleader.

No question is raised as to the status of the petitioner, Felix A. Toupin. By the terms of the act of the general assembly, passed at its January session, 1935, and approved by the governor April 4, 1935, which created the new board of police commissioners for the city of Woonsocket, the mayor becomes a member thereof by virtue of his office. However, he has chosen to join in the petition and to support the claims of the petitioners in this case.

Petitioners, Jalbert and Gadoury, base their claims to the offices of police commissioners of said city upon their alleged selection by the board of aldermen of that city, upon a voice vote taken during the continuation of the scheduled regular meeting of said board, held on April 23, 1935, after the city clerk, who by law is the clerk of that board, had been ejected therefrom by the police at the command of the mayor, who presided at said meeting, and after aldermen James H. Holland, Thomas W. Martin and Joseph Lauzon, hereinafter for convenience called the majority, had withdrawn from the meeting and aldermanic chamber to join the city clerk elsewhere. The other aldermen, Robert J. Doris and Hormisdas E. Morin, hereinafter for convenience called the minority, together with the mayor as presiding

officer, continued with the meeting, and petitioners depend on the votes of said minority for their appointment.

The intervenors base their claims to the same offices of police commissioners upon their selection at an alleged adjourned meeting of the board of aldermen, held on April 30, 1935, at which only the three majority aldermen and the city clerk were in attendance. They claim that, at said regular meeting held April 23, the motion of alderman Holland to adjourn until April 26, 1935, had been regularly made, seconded and passed on roll-call vote before the city clerk and said majority aldermen had withdrawn from the meeting; that a meeting, at which only the said majority aldermen and the clerk were present, was held on April 26 pursuant to said motion for adjournment; and that this later meeting, after transacting certain routine business not of consequence here, was again adjourned by said majority to be held, and was held, on April 30, 1935, at which time the intervenors were selected.

The claims of both petitioners and intervenors to these offices, therefore, must be based ultimately upon the regular meeting of the board of aldermen held on April 23, 1935, and the validity of the action or actions taken by the board at that meeting.

The petitioners admit that, after the withdrawal of the city clerk and the majority members, all the business attempted during the alleged continuation of that meeting, including the election of the temporary clerk, Holgate, and their own selection as police commissioners, was carried out upon voice votes, wherein only two aldermen, or less than a *quorum* in fact, actually were present and voting. But they assert that the *quorum*, as shown on the attendance roll-call at the opening of the meeting, must be presumed legally to have continued until its absence was properly noted or otherwise legally determined; that such absence of a *quorum* never was noted or determined properly; that the motion of alderman Holland to adjourn until April 26 never was entertained, or properly put to the board or

passed; and therefore that the meeting was not adjourned but continued and, so far as the record ought to show, petitioners were duly appointed.

The intervenors contend that the record of the city clerk, Jarrett, being the only official one, is conclusively binding upon us and may not be attacked collaterally by parol evidence. They claim that this record shows substantially among other things, the making, seconding and passage of alderman Holland's motion to adjourn to April 26, on a roll-call vote, and the consequent adjournment of this regular meeting prior to any action by the board having been suggested or taken upon the appointment of these petitioners, or any other persons, for the same offices. Moreover, they assert that the ostentatious withdrawal together of said majority, under the circumstances present at the time of this meeting, was sufficient notice to the presiding officer that there was *in fact* an absence of a *quorum* and that thereafter *in fact* and *in law* business could not be transacted until a *quorum* was properly reestablished. They further claim that any other method of attempting to raise the question of "no quorum," according to accepted practices, such as points of order or other appropriate action, would be alike ineffective and futile in view of the presiding officer's determination to ignore the mandates of the city charter, and because of his refusal to recognize the majority in accordance with their own adopted and generally accepted rules of procedure.

The petitioners, on the other hand, answer this contention by challenging both the sufficiency and accuracy of clerk Jarrett's record. They insist that oral testimony not only may, but must, be admitted in the nature of things in order to ascertain the true and complete record of the actions of the board at the meeting in question.

In treating with these particular opposing contentions, as indeed throughout the consideration of this entire case, it must be understood that we are not concerned here with a large deliberative body or with the legislature of a sovereign

state. Rather we are dealing with a small municipal body, consisting of only five voting members, the presiding officer and the clerk gathered in meeting around an ordinary conference table. Nor are we confronted by ordinary facts in an usual case. This case is a most unusual one based upon the proceedings of a very peculiar meeting, where there were strenuous objections and disputes on all the events and actions material for our decision. This meeting was held, according to the evidence, during the time when a serious condition of tumult and police disorder in the city hall had been proclaimed by the mayor to be in existence and the emergency thereunder had not been declared at an end. No case has been cited or has come to our attention where the circumstances and claims are just like the ones which are presented here.

We have held in the case of *Gelinas* v. *Fugere*, 55 R. I. 225, which was heard together with this case and decided separately, that the record should contain the facts of the proceedings and the events and actions taking place in the meeting in the presence of the clerk. Gratuitous conclusions of the clerk, not based upon a proper showing in the record of sufficient facts or actions to warrant that conclusion certainly are not conclusively binding upon us in equity. The general principle for which the intervenors contend, namely, that parol evidence is not admissible in an ordinary case to attack collaterally an official record, may be conceded. This petition, however, is brought to try title to public office. That title is derived solely from the lawful votes of a majority of said board. The only and usual way to determine such votes directly is to consider the record of the meeting where the votes were taken. It may well be contended here, therefore, that the attack, if any, upon the alleged official record was not a collateral but a direct attack.

In any event, the alleged official record of the city clerk, Jarrett, presented by the intervenors is insufficient upon its face. It discloses vital gaps in the proceedings which must be filled, if at all, by oral testimony. It contains conclusions

of the city clerk on material matters without showing all of the proper facts and steps taken in the proceedings that are necessary to validate such conclusions. It seeks to incorporate, as a part of the proper record of that meeting of the board, certain events which, on the very face of the same record, admittedly happened after the meeting had been recorded as adjourned.

On the other hand, the alleged record of the proceedings of this entire meeting of the board, which the petitioners offered in their own behalf, likewise was insufficient and obviously not the official, true and complete record of the proceedings at this meeting. It was compiled, according to the testimony, by temporary clerk, Holgate, who was elected to such office, according to the petitioners' claim, upon a voice vote of the two minority members who, with the mayor presiding, remained to continue the meeting, after the ejection of the city clerk and after the withdrawal of the majority from the chamber. Moreover, it appears that this other record admittedly was prepared by temporary clerk, Holgate, with the assistance of the mayor at some time after the meeting had adjourned and dispersed.

In this discordant situation and with obvious insufficiency upon the *prima facie* showing of the alleged record, we admitted testimony *de bene* to establish whether there was any factual basis for the material conclusions appearing in the city clerk's record, and to establish whether there was any true and complete record of the proceedings of the April 23 meeting of said board, which was sufficiently reliable in fact to be treated by us as a basis for the conclusions of law, which we are called upon to make. This course, too, was dictated by the very nature of the proceeding which calls for the exercise of the broad revisory powers in law and equity reposed in this court by the constitution. Having taken jurisdiction to determine one phase of the controversy, oral testimony was found also advisable and necessary to understand and settle in one hearing as many other related questions as possible.

The following facts, appearing from the testimony at the hearing and the record, seem necessary and sufficient for a proper understanding of the situation presented by this case. Prior to April 4, 1935, the police department of the city of Woonsocket was under the control of a single police commissioner, appointed by the governor of the state, with the advice and consent of the senate, by virtue of public laws 1926, chapter 923, and public laws 1929, chapter 1501.

The general assembly, at its January session, 1935, enacted, and the governor, on April 4, 1935, approved an act entitled: "An Act to Establish the Board of Police Commissioners for the City of Woonsocket, and Repealing Chapter 923 of the Public Laws 1926 as Amended by Chapter 1501 of the Public Laws 1929." This act, as its title shows, provided for the repeal of chapter 923 of public laws 1926 and chapter 1501, public laws 1929, and provided, among other things, that the police department of said Woonsocket should be under the control of a new board of police commissioners, consisting of three members, one of whom should be the mayor of that city, *ex officio*, and the other two members should be qualified electors of said city and appointed by the board of aldermen for certain definite terms. This last enactment further provided that the qualified citizens of Woonsocket should elect the successors to the police commissioners, so appointed by the board of aldermen, upon the expiration of their respective terms of office. It also expressly directed the board of aldermen to appoint said new police commissioners upon the passage of said act in accordance with the authority granted therein. Although a regular meeting of said board of aldermen was scheduled under its rules to be held April 9, 1935, no such meeting was held on that date, because the absence of aldermen Holland, Martin and Lauzon prevented the two other aldermen, Morin and Doris, from transacting any public business, since the presence of at least three of the five members comprising the board of aldermen was necessary to constitute a *quorum* for such business. The

mayor, Felix A. Toupin, by virtue of his office under the charter, is the usual presiding officer of the meetings of the board of aldermen, but by express provision of the city charter ". . . shall have a right to vote in case of equal division only . . ." (see City Charter, Sec. III, clause 5.) Alderman Holland is the president of said board and presides in the absence of the mayor.

On April 4, 1935, when the act in question creating the new board of police commissioners was approved by the governor, the respondent, Marceau, was acting police commissioner of Woonsocket by virtue of his appointment by the governor under the previous existing public laws above mentioned, and continued to so act and to refuse, upon advice of the attorney general, to surrender his office or records to either group of claimants until their proper election and qualification had been determined and declared.

Both petitioners and intervenors presented evidence of their qualifications and the intervenors were in possession of certificates of appointment received from the city clerk.

On April 23, 1935, a regular meeting of the board of aldermen was duly convened. The mayor was present and presided. All members of the board were present and answered the calling of the roll. Immediately thereafter, alderman Doris of the minority was recognized and moved to dispense with the reading of the records of the previous meeting and this motion was seconded by alderman Morin also of the minority. Before the motion had been put to a vote, or at any rate before the result of the vote on the motion had been announced, alderman Holland of the majority arose and sought recognition to request a roll-call on the Doris motion, according to the provisions of the city charter, which is also incorporated in the rules of proceedings of the board. The pertinent portion of the city charter reads as follows: ". . . a quorum for business in each board shall consist of a majority thereof; and the yeas and nays upon any vote shall be entered upon the record

at the request, in the board of aldermen, of one member
. . . ." (Sec. VII).

From that moment, all subsequent material actions of
the members are disputed and the proposed records of the
proceedings and the testimony are in open and irreconcilable
conflict. The petitioners deny that alderman Holland
properly sought recognition from the chair and claim that
he demanded and directed the clerk to call the roll without
first properly seeking or obtaining such recognition and
without waiting to give the chair an opportunity to decide,
or to give suitable orders, if he so intended, to the clerk.

The intervenors claim that alderman Holland's first
request was addressed to the chair but was ignored. Then
realizing the futility of again seeking recognition when the
presiding officer palpably was intending to refuse it to the
majority, as evidenced in the mayor's act of beginning to
sweep through a voice vote on the Doris motion, they
claim alderman Holland requested the clerk to call the roll
on the question. The clerk proceeded without instructions
from the chair to call the roll. The mayor ordered him to
stop but he continued. The mayor then summoned a
police officer and commanded him to eject the clerk from
the room. Before the clerk had completed this roll-call
and when the mayor was about to announce, according to
the intervenors, and had announced, according to the
petitioners, that the Doris motion had prevailed, alderman
Holland again arose and moved to adjourn and demanded
a roll-call upon his motion. The petitioners claim this
motion to adjourn was never properly made or seconded.
The intervenors claim the motion to adjourn was made
properly by alderman Holland and was seconded by alder-
man Martin. By this time excitement was at a very high
pitch and disorder was general. In the midst of the con-
fusion, while being ejected from the chamber, city clerk,
Jarrett, momentarily escaped his police escort, returned and
repossessed himself of his clerk's records and then, as he was
being escorted from the chamber by the police officer, began

again to call the roll. Whether the clerk was then completing the first roll-call, or starting a new one, is disputed. His record would indicate that he was calling a new roll-call on the Holland motion to adjourn, which the intervenors claim is the fact, while certain of the testimony, including that of the clerk himself, makes it impossible to tell with certainty upon just what motion he was then calling the roll. The petitioners claim that the mayor did not put to the body this motion to adjourn nor did he direct the clerk to call the roll thereon. The clerk, in the custody of a police officer and walking toward the door, persisted in calling the roll without the order of the mayor to proceed and before he was ejected from the chamber. Apparently while still within the enclosure in the chamber, where board meetings were held and after the calling of the roll, he, clerk Jarrett, announced that "three had voted aye, two had not voted" and so he declared that the motion "to adjourn to next Friday at 8 o'clock, p. m., had been carried." The exact form and terms of this purported announcement is likewise the cause of dispute and the basis of entirely different and opposite testimony.

In fact practically every material step necessary for a proper conclusion, and the evidence thereof, from the moment alderman Doris made his original motion to dispense with the reading of the minutes, is the subject of dispute and hopelessly conflicting claims. The clerk testified that there was so much commotion going on that he could not remember what was done. He testified also that he did not remember that the mayor refused to entertain the adjournment motion; that "everything was going so fast" that he could not remember about them, and that Mr. Holland might have demanded a roll-call right after making his motion without waiting for the mayor to act. He said he also thought that the mayor's declaration of the result of a voice vote on the Doris motion stopped the first roll-call. His testimony indicates he wasn't quite certain about that nor about how far he actually reached in the call. He

further testified that he did not remember whether the motion to adjourn was put to the meeting but he thought that Mr. Holland put it. The latter stated in substance that his request to the clerk to call the roll amounted to the putting of the question of adjournment.

This brief summary from the testimony, in the very nature of things, can not reproduce and convey the real impression of commotion, confusion and disorder that undoubtedly existed throughout practically the entire meeting. The testimony discloses an utter disregard of law and orderly procedure to which all participants in that meeting made a substantial, if not an equal, contribution. Events and actions took place so quickly and so closely together as to be almost simultaneous. Frequently several persons sought to speak or act at the same time. The testimony, instead of clearing and confirming the official record as presented, casts further doubts upon it. The meeting was plainly out of proper control.

The parties have urged upon us certain questions involving the legal interpretation and effect of parliamentary law and procedure. Under our view of the evidence and our conclusions based thereon, all of these questions become immaterial for our present consideration or decision.

It is clear to us from all the evidence that, from the time alderman Doris made his motion to dispense with the reading of the minutes of the previous meeting, there was great excitement, unusual confusion and gross disorder in this meeting of April 23. The records presented by the city clerk and the temporary clerk respectively, contradict each other upon controlling facts and actions of the meeting. Both in turn are at considerable variance with other testimony produced at the hearing. The city clerk's own testimony confirms this prevalent confusion and his inability on that account to record properly all the actual and vital events taking place during these proceedings. Certain material conclusions inherent in the city clerk's record are rendered at least questionable by his own testimony and

that of other witnesses. He admits that some changes were made in his record after its original preparation but seeks to explain them generally, as inconsequential or ordinary corrections.

The only question of fact of vital and controlling character, upon which all of the persons participating in the meeting and all of the witnesses appearing before us seemingly do not differ materially, is that it was next to impossible for any one there to know and to record properly what actually was taking place and being done, because the various events occurred so rapidly and closely together and amidst such confusion and disorder.

Confronted, as the evidence thus showed, with such confused and confusing records and testimony and such undoubted disregard for law and orderly procedure, we are of the opinion that the board of aldermen thereby stripped itself of its character as a deliberative body. Following the making of the Doris motion, the participants, who made such substantial contribution to this disorder and lack of decorum, proceeded to act in their personal and not in their representative capacities. Because it was practically impossible for any one to know and to record accuratley just what actually was being said and done, and what was taking place at this meeting, we are of the opinion that said meeting of the board of aldermen of April 23, 1935, was not conducted in accordance with the provisions of the city charter and the accepted rules of orderly procedure, and that the actions purported to have been taken at such meeting are null and void.

It follows that the motion of alderman Holland to adjourn said meeting to April 26, 1935, has no validity. From this it follows necessarily that the meeting of April 26, 1935, which the majority attempted to hold in accordance with such invalid motion to adjourn, was not a valid meeting. The further conclusion necessarily follows that the meeting of April 30, 1935, based upon a motion to adjourn, made at the invalid meeting of April 26, is also invalid,

and the actions purported to have been taken therein are null and void.

It is not necessary to determine here the exact point at which a meeting of a deliberative body, such as this municipal board, may become so disorderly and out of control as to justify the conclusion that said body or board thereby forfeits its character as a representative and deliberative body. This general principle is recognized in the case of *Attorney General* v. *Remick*, 73 N. H. 25. There the mayor, as presiding officer, declared the meeting adjourned without a motion being addressed to him and without submitting such proposition to the council for its action. Thereupon the mayor and minority withdrew, leaving the majority to continue the meeting and to select the city clerk. In that case there were not present all of the same elements of disorder and other compelling facts as are presented in the instant case. But the court, in *quo warranto* to determine title to such municipal office, examined into the evidence to determine whether the disorder in the meeting was so great that the council had ceased to be a deliberative body, and whether the mayor, as chairman, was unable to preserve such a degree of order as was necessary for the transaction of legislative business. Each case must depend upon its own facts and circumstances for the proper application of this rule. It is sufficient here to hold that the facts and circumstances present at this meeting of the board of aldermen of the city of Woonsocket on April 23, 1935, convinces us that said meeting was invalid, for the reasons stated, in so far as the transaction of any public business was concerned.

In view of our opinion, based upon a careful consideration of all the record and all the testimony before us in this case, the respondent Marceau is entitled to hold office as police commissioner and to continue to conduct the affairs of the police department of the city of Woonsocket, until his successors are duly elected and qualified in accordance with the law.

It must be obvious that no legal selection or appointment of police commissioners under the law in question reasonably can be expected, unless and until the mayor and all members and officers of the board of aldermen see to it that the city charter and its pertinent provisions are given full force and effect. Continued refusal or failure to recognize the importance and binding character of the charter upon all proceedings of said board and upon all qualified participants in its meetings, logically will lead to disorder, lack of decorum and delay in transacting important public business.

The petition of Felix A. Toupin, Eugene L. Jalbert and Sarto A. R. Gadoury is denied and dismissed and the intervening petition of Charles M. McLaughlin and Wilfrid Rivet is likewise denied and dismissed.

*Eugene L. Jalbert* and *Felix A. Toupin*, for petitioners.

*John P. Hartigan, Attorney General*, and *John J. Cooney, Asst. Attorney General*, for respondents.

*Thomas F. Cooney, Edward F. Dwyer*, and *Peter W. McKiernan*, for intervenors.

*Morris E. Yaraus, City Solicitor*, for City of Woonsocket.