MARTIN J. WILLIAMS *vs.* CITY OF GLOUCESTER.

Essex.   November 7, 1888. — January 3, 1889.

Present: MORTON, C. J., FIELD, DEVENS, C. ALLEN, & KNOWLTON, JJ.

*City — Charter — Ordinance — Mayor and Aldermen — Vote —*
*Appointments and Removals.*

The charter of the city of Gloucester (St. 1873, c. 246), providing, in § 11, that the mayor and aldermen shall have full and exclusive power to appoint police officers, "the same to remove at pleasure," and in § 9, that the mayor may, if in his opinion the public good requires, "remove, with the consent of the appointing power, any officer" appointed upon his nomination, authorizes the mayor with such consent to remove police officers, including the appointees of a predecessor, without a hearing or cause shown.

Section 39 of c. 16 of the ordinances of such city, as to hearing complaints against police officers for "any irregularity, not sufficient to call for his removal from the force," applies to minor irregularities, and does not limit the power of removal vested in the mayor by the charter.

The joint rules and orders of the city council of such city, providing, in art. 2, § 10, that "all officers whose salary is payable from the city treasury shall be elected by written or printed ballots," applies to elective officers to be chosen by such council under the city charter, and not to subordinate officers, such as police officers.

The records of the mayor and aldermen of such city stated that, at a meeting of a certain date, "his Honor then removed from the police force M. J. W.; the board non-concurred in the removal" by a tie vote; "his Honor then nominated J. K. in place of M. J. W. and called for his confirmation by a *viva voce* vote, and J. K. was declared confirmed as a police officer in place of M. J. W.," a notice of his removal thereupon being duly served on M. J. W. *Held,* that M. J. W. was lawfully removed on that date, and could not recover salary subsequently accruing.

CONTRACT to recover salary, as a police officer, from February 5 to April 9, 1887.  Writ dated April 12, 1887.

At the trial in the Superior Court, before *Thompson,* J., it appeared in evidence that the plaintiff was appointed a police officer of the city of Gloucester, in 1884, by the mayor and board of aldermen of that year, and continued to act as such under that appointment.

The defendant, for the purpose of proving that on February 5, 1887, the plaintiff had been removed from his position as a police officer by the mayor and board of aldermen then in office, introduced in evidence the following record of the mayor and aldermen, at a meeting held on February 1, 1887 : " His Honor

then removed from the police force Martin J. Williams. The Board non-concurred in the removal by the following yea and nay vote: Yeas, Aldermen Cook, Watson, Curtis, Piper. Nays, Aldermen Gaffney, Shepherd, Dennen, Homans. . . . His Honor then nominated John Karcher in place of Martin J. Williams, and called for his confirmation by a *viva voce* vote, and John Karcher was declared confirmed as a police officer in place of Martin J. Williams." This record was approved at the next meeting of the board. The defendant also introduced in evidence, that on February 2, 1887, the plaintiff was duly notified of his removal, which was to take effect on February 5.

The defendant also introduced in evidence the following portions of the city charter of Gloucester (St. 1873, c. 246, §§ 11, 12): " The mayor and aldermen shall have full and exclusive power to appoint a constable or constables, and a city marshal and assistants, with the powers and duties of constables, and all police officers, and the same to remove at pleasure "; and " in all cases in which appointments are directed to be made by the mayor and aldermen, the mayor shall have the exclusive power of nomination, being subject, however, to confirmation or rejection by the board of aldermen."

It appeared in evidence that the police officers received their pay directly from the city treasury, and that John Karcher was not balloted for as a police officer; and the plaintiff introduced in evidence the joint rules and orders of the city council, art. 2, § 10, as follows: " All officers whose salary is payable from the city treasury shall be elected by written or printed ballots." The plaintiff further introduced in evidence the following portion of the city charter (St. 1873, c. 246, § 9): " The mayor shall be the chief executive officer of the city. It shall be his duty to be active and vigilant in causing the laws and regulations of the city to be enforced, and to keep a general supervision over the conduct of all the subordinate officers. Whenever in his opinion the public good so requires, he may remove, with the consent of the appointing power, any officer over whose appointment he has, in accordance with the provisions of this charter, exercised the power of nomination." The plaintiff also introduced c. 16, § 39, of the ordinances of the city, as follows: " All complaints made against any member

of the department [referring to the police department] by any other member thereof, or by any other person, shall be reduced to writing with the specifications, and shall be signed by the party making the complaint before the same shall be investigated; an investigation of all charges shall be made by the board of aldermen, and when an officer is found guilty of any irregularity, not sufficient to call for his removal from the force, the board of aldermen shall decide what the punishment shall be therefor, as provided in the preceding section." It appeared in evidence that the punishment alluded to in this section was that the officer should be liable to reprimand, suspension, deduction from his pay, or discharge, according to the nature and aggravation of his offence.

The plaintiff contended that there was no vote by the mayor and aldermen showing that he had been removed as a police officer; that the alleged vote upon the records was insufficient, incomplete, and was not a legal vote; that, under the city charter, the mayor had no right to remove the plaintiff without cause, and that the plaintiff was entitled to a hearing before he could be removed from the force; and that upon all the evidence he was still a police officer and was entitled to his pay. It was admitted by the defendant, that, if the record of the doings of the mayor and board of aldermen, as above set forth, together with the other facts in the case, did not constitute a removal, then the plaintiff was still a police officer of the city of Gloucester, and was entitled to recover judgment for his salary.

Upon this evidence, the judge ruled that the plaintiff could not maintain his action, and ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*H. F. Hurlburt & J. J. Flaherty*, for the plaintiff.

*M. J. McNeirny*, for the defendant.

MORTON, C. J. The question presented by this bill of exceptions is, whether the plaintiff, who was a police officer of the city of Gloucester, was legally removed from his office on February 1, 1887.

The charter of the city provides that " the mayor and aldermen shall have full and exclusive power to appoint a constable or constables, and a city marshal and assistants, with the powers

and duties of constables, and all police officers, and the same to remove at pleasure." St. 1873, c: 246, § 11. It also provides that the mayor, whenever in his opinion the public good so requires, may " remove, with the consent of the appointing power, any officer over whose appointment he has, in accordance with the provisions of this charter, exercised the power of nomination." St. 1873, c. 246, § 9. The plaintiff contends that the mayor, with the consent of the aldermen, can only remove officers who are appointed by him personally, and not those appointed by his predecessor. But this claim cannot be sustained. The two clauses were intended to be harmonious, and the one last cited means that the appointing power may remove any officer who has been appointed upon the nomination of any mayor. At any rate, it cannot be construed to cut down the power distinctly conferred by § 11, " to remove at pleasure " the officers named therein.

The plaintiff also contends that the mayor and aldermen cannot remove a police officer except for cause and after a hearing. But this is inconsistent with the broad and general power conferred by the charter " to remove at pleasure " such officers. *Knowles* v. *Boston*, 12 Gray, 339. The provision of the ordinances of the city, chapter 16, section 39, as to hearing complaints against police officers, was intended to provide for minor irregularities, " not sufficient to call for his removal from the force," and not to limit the power conferred by the charter; if it attempted to do this, it would be repugnant to the statute, and therefore void. *Commonwealth* v. *Allen*, 128 Mass. 308. The plaintiff further contends that the officer alleged to be appointed in his place was not legally appointed, because the tenth section of article 2 of the joint rules and orders of the city council provides that " all officers whose salary is payable from the city treasury shall be elected by written or printed ballots." This was plainly intended to apply to elective officers to be chosen by the council under the charter, and not to subordinate officers, like police officers, who are appointed and whose compensation is fixed by the mayor and aldermen.

The only remaining question is, whether the record of the mayor and aldermen shows that the plaintiff was removed. The record states that, at a meeting held on February 1, 1887,

"His Honor then removed from the police force Martin J. Williams. The board non-concurred in the removal by the following yea and nay vote: Yeas, Aldermen Cook, Watson, Curtis, Piper. Nays, Aldermen Gaffney, Shepherd, Dennen, Homans. . . . His Honor then nominated John Karcher in place of Martin J. Williams, and called for his confirmation by a *viva voce* vote, and John Karcher was declared confirmed as a police officer in place of Martin J. Williams." The next day a notice of his removal was served upon the plaintiff. This record shows that Karcher was duly appointed police officer in place of the plaintiff. It is the duty of the presiding officer to ascertain and declare the result of a vote unless the meeting directs some other mode; and when his declaration is assented to, and accepted by the meeting, and recorded, the record is evidence that the vote was duly passed. *Putnam* v. *Langley*, 133 Mass. 204.

The case before us differs entirely from the case of *Commonwealth* v. *Allen*, 128 Mass. 308, cited by the plaintiff. In that case, the mayor, having nominated the chief of police, put the question in this form: "Shall the nomination be rejected?" There was a tie vote, and the mayor declared that the nomination was not rejected, and announced that the defendant was appointed chief of police. The court held that the record showed that the defendant was not confirmed by a majority of the aldermen, and therefore was not duly appointed.

We are of opinion that the effect of the vote appointing Karcher was to work the removal of the plaintiff. The vote imports that he was appointed "in place of" the plaintiff. By necessary implication, it operates to remove the plaintiff; otherwise, the vote is nugatory. The fact that the aldermen had previously non-concurred in his removal was not material. The subject was under their control, and they could act upon it in such mode as they saw fit, at the same or any subsequent meeting. No law exists which required them in form to reconsider their former vote. The later vote upon the same subject is repugnant to, and rescinds, the prior vote. Upon the whole case, we are of opinion that the plaintiff was lawfully removed, and therefore that he cannot recover in this action.

*Exceptions overruled.*