GILBERT A. A. PEVEY *vs.* JAMES F. AYLWARD & another.

Middlesex.   January 12, 13, 1910. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Cambridge*, City solicitor.  *Municipal Corporations.  Elections.*

In the provision of the revised charter of the city of Cambridge, contained in St. 1891, c. 364, § 20, as amended by St. 1907, c. 491, that in the year 1908, and every third year thereafter, in the month of April the city council shall elect a solicitor for the city of Cambridge, the mention of the month in which the election shall be held is merely directory, and, upon a petition for a writ of mandamus contesting the validity of the election of a city solicitor by the city council of that city, it was conceded that the first election after the amendment of 1907 could take place lawfully on June 29, 1909.

A provision contained in the Joint Rules and Orders of the City Council of the city of Cambridge that every ordinance and every order requiring concurrent action shall, after passing one board, remain in the possession of the clerk of that board for thirty-six hours, to give an opportunity for a motion for reconsideration, has no application to the election of a city solicitor by a concurrent vote of the city council of that city taken orally as required by R. L. c. 26, § 7, such a proceeding not being an ordinance or an order.

A rule of the common council of a city providing that " in the absence of the president, the clerk, and in his absence, the senior member present, shall call the council to order, and preside until a president *pro tempore* is chosen by ballot," applies only to the organization of a meeting in the absence of the president, and has no application where, after a meeting has been organized and has been doing business, the president abandons his post, leaving the meeting without a presiding officer.  In such a case the meeting properly may choose a presiding officer in any reasonable way.

Section 20 of St. 1891, c. 364, of the revised charter of the city of Cambridge, as amended by St. 1907, c. 491, provides that at the times there directed the city council shall by concurrent vote, the board of aldermen acting first, elect a solicitor for the city.  The board of aldermen acting under this statute voted to elect a certain person city solicitor and sent a communication to the common council giving notice of the election.  On the receipt of this communication, a member of the common council moved to adjourn.  The president declared that this motion was carried, " and immediately left the chair."  The vote on the motion was doubted.  A member of the council at once assumed the chair, and upon the motion of another member was chosen president *pro tempore.* A committee which was appointed to wait on the president and request him to resume his duties reported that they were unable to find the president. The communication from the board of aldermen giving notice of their election of a city solicitor then was read by the president *pro tempore*, and the council upon motion proceeded to the election of a city solicitor, the roll being called and the vote taken *viva voce* as required by R. L. c. 26, § 7.  A majority of the members present, who also were a majority of all the members of the common council, voted for the same person elected by the board of aldermen, the person voted for was declared to have been elected city solicitor, and notice to this effect

was sent to the board of aldermen. A rule of the common council was as follows: "The president shall declare all votes. If any member doubts the vote, the president, without further debate upon the question, shall require the members voting in the affirmative and negative to rise and stand until they are counted." Upon a petition for a writ of mandamus contesting the validity of the election of the city solicitor, it was *held*, that upon the election of a temporary presiding officer, it became his duty to resolve the doubt on the motion to adjourn, and that, although in doing this the temporary president and the council did not follow the rule, yet, by proceeding to do business apparently by common consent and without objection from anybody, they resolved the doubt in regard to the vote on the motion to adjourn, their action being inconsistent with any other conclusion than that the motion was not carried; that this action, appearing to have been taken by the unanimous consent of all the members present and its meaning being plain, was as effectual as if it had been regular; and that the president's declaration before leaving the chair that the motion to adjourn was carried became of no effect when the vote was doubted without delay; therefore, that the election of the city solicitor was valid.

PETITION, filed on November 16, 1909, for a writ of mandamus commanding the respondent James F. Aylward to refrain from performing the duties of city solicitor of the city of Cambridge and commanding the respondent William F. Brooks as mayor of the city of Cambridge to recognize the petitioner as such city solicitor.

The case came on to be heard, upon the pleadings, an agreed statement of facts and the exhibits attached thereto, before *Hammond*, J., who reserved it for determination by the full court, such order or decree to be made as law and justice might require.

*S. D. Elmore*, (*P. R. Ammidon* with him,) for the petitioner.

*H. Parker*, (*F. M. Phelan* with him,) for the respondent Aylward.

*F. J. Carney*, for the respondent Brooks.

KNOWLTON, C. J. This is a petition for a writ of mandamus to prevent the respondent Aylward from acting as city solicitor for the city of Cambridge, and to compel recognition of the petitioner's alleged right to that office. The question turns upon the validity of Mr. Aylward's election, which was declared by the common council in concurrence with the board of aldermen on June 29, 1909. It is not now contended that the election was invalid because it was not held in the month of April, according to the requirement of the St. 1891, c. 364, § 20. See *Rutter* v. *White*, 204 Mass. 59; *Cheney* v. *Coughlin*, 201 Mass. 204.

On June 29, 1909, this respondent was legally elected by the

board of aldermen, and notice of his election was sent to the common council. The statutory provision is as follows: "In the year one thousand nine hundred and eight, and every third year thereafter, in the month of April, the city council, by concurrent vote, the board of aldermen acting first, shall elect a solicitor for the city of Cambridge," etc. St. 1891, c. 364, § 20, as amended by St. 1907, c. 491. By the R. L. c. 26, § 7, it is provided that "no election of a city officer by a municipal body or board shall be valid unless made by a *viva voce* vote, each member who is present answering to his name when it is called by the clerk or other proper officer, stating the name of the person for whom he votes, or that he declines to vote."

The first objection of the petitioner to the election is that it was in violation of § 21 of the Joint Rules and Orders of the City Council, which provides that every ordinance and every order requiring concurrent action shall, after passing one board, remain in the possession of the clerk of that board for thirty-six hours. This is to give an opportunity for a motion for reconsideration, according to the later provision of the same section, and provisions on the same subject in § 18 of the Rules of the Board of Aldermen, and § 17 of the Rules of the Common Council. But these rules are not applicable to the election of a city solicitor, under the requirement of the statute. Such an election is not an ordinance or order, within the meaning of the rule. Section 21, after the requirement stated above, provides that if no motion for reconsideration is entered, the ordinance or order shall be sent to the clerk of the other board, who shall cause the same to be printed in a calendar, etc. In this case there was no ordinance or order. There was a vote upon an oral motion, in the board of aldermen, to proceed to the election of a city solicitor. Then an election was had in the manner prescribed by the statute. The result was recorded and notice of what had been done was sent to the common council. The proceeding is not within the definitions of orders and ordinances in §§ 1, 2 of the joint rules,* nor is it within the meaning and object of § 21. This objection of the petitioner is not well founded.

---

* The sections referred to are as follows:

"Section 1. All by-laws passed by the city council shall be termed

The next question arises upon proceedings after a motion to adjourn in the common council. The record is as follows:

"At this time Councilman Beane submitted a motion 'That the Common Council do now adjourn.'

"The President declared this motion to be carried, and immediately left the chair.

"The vote on this motion was doubted.

"Councilman Nelligan assumed the chair at once, and Councilman Murphy submitted a motion that Councilman Nelligan be chosen President temporarily.

"This motion was declared to be carried.

"On motion of Councilman Trodden, a committee consisting of Councilman Horan and Councilman Murphy was appointed to wait on the President and request him to resume his duties.

"This committee reported that they were unable to find the President.

"The aforesaid communication from the Board of Aldermen giving notice of the election of James F. Aylward as City Solicitor, was then read by the President *pro tempore.*

"Councilman Horan submitted a motion that the Common Council proceed to the election of a City Solicitor.

"This motion was declared to be carried.

"The roll of members was called by the clerk and each member present announced his choice for City Solicitor as follows:"

Then follows the record of the vote of each member present, showing twelve votes for the respondent Aylward and two for the petitioner, and showing the names of the absent members, who were eight in number. Mr. Aylward was declared elected city solicitor, in concurrence with the board of aldermen, and notice was sent to that board.

The petitioner contends that the common council was adjourned, and that the subsequent proceedings were all invalid. We must construe the record as meaning that the vote to adjourn,

ordinances; and the enacting style shall be, 'Be it ordained by the city council of the City of Cambridge.'

"Sect. 2. In all votes, by which either or both branches of the city council express anything by way of command, the form of expression shall be, 'Ordered'; and whenever either or both branches express opinions, principles, facts or purposes, the form shall be 'Resolved.'"

as declared, was doubted without delay. Under § 2 of the Rules and Orders of the Common Council,* it is the duty of the president, in such cases, to resolve the doubt at once by requiring "the members voting in the affirmative and negative to rise and stand until they are counted." That would be his duty if there were no such rule. This president did not relieve himself of the duty by "immediately" leaving the chair. As he ceased to act as presiding officer, the members were obliged to choose some one else to act in his stead, and their choice of a president *pro tempore* was properly made. *Holt* v. *Somerville*, 127 Mass. 408, 411. *Bennett* v. *New Bedford*, 110 Mass. 433, 438. It is objected that this was illegal because § 1 of the rules declares that "in the absence of the president, the clerk, and in his absence, the senior member present, shall call the council to order, and preside until a president *pro tempore* is chosen by ballot." But this rule applies to the organization of a meeting in the absence of the president. It has no application to a case where the meeting is organized and doing business, and the president abandons his post, and leaves the meeting without a presiding officer. In such a case the meeting properly may choose a presiding officer in any reasonable way. The clerk may preside until the temporary president is chosen, or any member may do so. As soon as the temporary president was chosen, it was the duty of the meeting to resolve the doubt on the motion to adjourn, in accordance with the rule. In their method of doing this they did not follow the rule. But apparently by common consent, and without objection by anybody, they did resolve the doubt by proceeding to do business. This action was inconsistent with any other conclusion upon the motion to adjourn than that it was not carried.

---

* The sections referred to are as follows:

"Section 1. The president shall call the council to order at the hour to which it has adjourned, and a quorum being present, shall proceed to the regular order of business. In the absence of the president, the clerk, and in his absence, the senior member present, shall call the council to order, and preside until a president *pro tempore* is chosen by ballot. A plurality of votes shall elect.

"Sect. 2. The president shall declare all votes. If any member doubts the vote, the president, without further debate upon the question, shall require the members voting in the affirmative and negative to rise and stand until they are counted."

The president's declaration of adjournment had no effect to bring the meeting to an end when the vote declared was promptly doubted. The meeting continued without being adjourned, and took action which was equivalent to a decision that the motion to adjourn was not carried. *Baker* v. *Cushman*, 127 Mass. 105, 106. *Williams* v. *Gloucester*, 148 Mass. 256, 260. *Wood* v. *Milton*, 197 Mass. 531. While this was irregular, its meaning was plain, and seemingly, it was by the unanimous consent of all the members present. It was, therefore, as effectual as if it had been regular. See *Attorney General* v. *Remick*, 73 N. H. 25; *Hicks* v. *Long Branch*, 40 Vroom, 300, 303; *Putnam* v. *Langley*, 133 Mass. 204; *Wood* v. *Cutter*, 138 Mass. 149. *Wheelock* v. *Lowell*, 196 Mass. 220, 230. *Sinclair* v. *Mayor of Fall River*, 198 Mass. 248, 256.

The attempt to adjourn having thus been disposed of, the election was valid. It was agreed to, not only by a majority of the members present, but by a majority of the members of the whole common council. Even if there had been irregularities in the election itself, unless they were such as to defeat or render doubtful the expression of the will of the voters, the court would desire to give effect to the action of the majority. *Attorney General* v. *Campbell*, 191 Mass. 497, 502. *Blackmer* v. *Hildreth*, 181 Mass. 29, 32. *Commonwealth* v. *Smith*, 132 Mass. 289, 296. *People* v. *Wood*, 148 N. Y. 142.

As the respondent Aylward was legally elected, the right of the petitioner, who was holding over after the expiration of his term of office until his successor should be chosen, was thereby terminated.

*Petition dismissed.*