OLD SOUTH ASSOCIATION IN BOSTON *vs.* CITY OF BOSTON.

Suffolk.    March 20, 1912. — June 18, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Old South Association in Boston. Corporation,* Charitable.    *Tax,* Exemption. *Statute,* Construction.    *Damages,* For property taken or damaged under statutory authority.

St. 1877, c. 222, chartering the Old South Association "for the purpose of acquiring and holding the Old South Meeting-House in Boston and the land under and adjacent to the same . . . for public, historical, memorial, educational, charitable and religious uses and none other," gave the corporation "power to take and appropriate to the uses of said corporation, said meeting-house and land or any interest therein," and further provided that "said meeting-house and land shall be exempt from taxation while said meeting-house shall be used for any of the purposes aforesaid." *Held,* that the exemption from taxation both of the land upon which the meeting house stands and of the land adjacent to it continues so long as the meeting house is preserved and used for the purposes of the charter, although the corporation puts the adjacent land to other uses which are

not inconsistent with those purposes and which by yielding revenue may promote them.

Although, where language in a statute has a plain meaning, such meaning cannot be affected by the character of proceedings before the enactment of the statute, records of such proceedings may be examined to assist in construing language of doubtful import in a statute.

Upon a petition by the Old South Association in Boston, a corporation incorporated under St. 1877, c. 222, for damages sustained by the taking under St. 1902, c. 534, of land adjacent to the Old South Meeting House for the purpose of the construction of the Washington Street tunnel, it was *held* that it was proper for the presiding judge to rule that "the petitioner had a right under its charter to use the land adjacent to the meeting house in the most profitable manner whenever it saw fit to do so for the purpose of producing income to preserve the meeting house and to carry out its other charter purposes and that the jury should assess damages accordingly," and also that "in addition to the damages which would be awarded to an ordinary petitioner this petitioner is entitled to such a sum as will in the opinion of the jury compensate it for that feature or special damage contained in its loss by the taking which is created by the charter exemption from taxation of the space taken."

PETITION, filed on September 6, 1907, under St. 1902, c. 534, § 8, for the assessment of damages sustained by the taking of land lying north of the Old South Meeting House in Boston for the purpose of making an entrance to and an exit from the Washington Street tunnel.

Material portions of the petitioner's charter, St. 1877, c. 222, are as follows:

"An Act to incorporate the Old South Association in Boston, and to provide for the preservation of the Old South Meeting-House.

"Be it enacted, etc., as follows:

"Section 1.   The governor of the Commonwealth, the mayor of the city of Boston, the president of Harvard College, the president of the Massachusetts Historical Society, the president of the American Antiquarian Society, and the president of the New England Historic-Genealogical Society, *ex officiis*, and William Gaston, John Lowell, Samuel E. Sewall, Edmund Quincy, Samuel A. Green, Henry Lee, Martin Brimmer and John D. Long, and their associates and successors, are hereby made a body corporate by the name of the Old South Association in Boston, for the purpose of acquiring and holding the Old South Meeting-House in Boston and the land under and adjacent to the same upon the corner of Milk Street and Washington Street in said city, for public, historical, memorial, educational, charitable and religious

uses and none other, with all the powers and privileges, and subject to all the duties, liabilities and restrictions set forth in chapter sixty-eight of the General Statutes and acts in addition thereto. Said corporation shall have the power to take and appropriate to the uses of said corporation, said meeting-house and land or any interest therein. . . . And said corporation shall also have power, until the foregoing powers are exercised, to take a lease of said meeting-house and land, or the interest so taken, and hold the same thereunder for the purposes aforesaid.

"Section 2. The officers of said corporation shall consist of a board of managers, the number of which shall be fixed by the by-laws, and of which the six first named in this act shall be members *ex officiis*, and two shall be elected annually by the city council of the city of Boston, and the rest shall be elected by the members of the corporation; and said managers shall elect one of their number president, and shall also elect a secretary and a treasurer. All officers shall hold over until others are chosen in their stead. New members may be admitted in such manner as the by-laws shall provide.

"Section 3. Said corporation may make contracts with the Commonwealth for the use of said meeting-house for the annual election sermon, and with the Commonwealth or the city of Boston for its use for any public purposes not inconsistent with the provisions of this act.

"Section 4. Said meeting-house and land shall be exempt from taxation while said meeting-house shall be used for any of the purposes aforesaid, and shall be exempt from any tax for the year eighteen hundred and seventy-seven.

"Section 5. This act shall take effect upon its passage."

In the Superior Court the case was tried before *Fessenden,* J. After the jury had taken a view and before any evidence was introduced, the petitioner asked for the following rulings:

1. "That the petitioner had a right under its charter to use the land adjacent to the meeting house in the most profitable manner whenever it saw fit to do so for the purpose of producing income to preserve the meeting house and to carry out its other charter purposes and that the jury should assess damages accordingly.

2. "That in addition to the damages which would be awarded to an ordinary petitioner this petitioner is entitled to such a sum as

will in the opinion of the jury compensate it for that feature or special damage contained in its loss by the taking which is created by the charter exemption from taxation of the space taken."

The judge gave the first ruling and refused the second. The trial then proceeded, and the jury returned a special finding of $100,000, representing the petitioner's damage without interest, it having been agreed that interest from the date of the taking should be computed and added by the judge; and, it appearing that that sum had been paid to the petitioner by the respondent, a verdict was ordered for the respondent subject to an exception by the petitioner; and the case was reported for determination by this court, it being agreed that, if the first ruling above quoted was given rightly without the second, the verdict ordered was to stand, but that, if the second ruling should have been given, judgment was to be entered for the petitioner for the sum of $25,000, with interest from the date of the taking.

The case was submitted on briefs.

*N. Matthews, W. G. Thompson & R. W. Hale,* for the petitioner.

*T. M. Babson,** for the respondent.

RUGG, C. J. The petitioner was organized under St. 1877, c. 222, "for the purpose of acquiring and holding the Old South Meeting-House in Boston and the land under and adjacent to the same upon the corner of Milk Street and Washington Street in said city, for public, historical, memorial, educational, charitable and religious uses and none other." Before 1877 the Old South Meeting House had been given up as a place of worship by the religious society which had occupied it since its erection in 1729. Pursuant to the power conferred by this statute the petitioner acquired title to the real estate thus described.

This petition is brought for the assessment of damages occasioned by the taking of a part of the land lying north of the meeting house for the Washington Street tunnel. The case was submitted to the jury with instructions under which recovery was permitted on the ground that the petitioner "had a right . . . to use the land adjacent to the meeting house in the most profitable manner whenever it saw fit to do so for the purpose of producing income

---

* Mr. Babson died on March 5, 1912, but the brief which had been prepared by him was submitted in his name.

to preserve the meeting house." The petitioner contends that it should have been allowed to recover in addition such sum as would "compensate it for that feature or special damage contained in its loss by the taking which is created by the charter exemption from taxation of the space taken."

The charter of the petitioner contains in § 4 a special exemption from taxation in these words: "Said meeting-house and land shall be exempt from taxation while said meeting-house shall be used for any of the purposes aforesaid, and shall be exempt from any tax for the year eighteen hundred and seventy-seven." This exemption from taxation is materially different from that found in the general law at the time it was passed or at any time since. Gen. Sts. c. 11, § 5, cl. 3, as affected by St. 1874, c. 375, § 8 (now St. 1909, c. 490, Part I, § 5, cl. 3). It is plain that the contention of the respondent would be unanswerable, if the rights of the petitioner depended upon the general law. Real estate held by ordinary educational, charitable or religious institutions is exempt from taxation only to the extent that it is appropriated to their distinctive uses. *Amherst College* v. *Amherst,* 193 Mass. 168. *Evangelical Baptist Society* v. *Boston,* 204 Mass. 28. If the Legislature had intended only this exemption, no special provision touching taxation would have been required. But the Legislature meant something more than the general exemption granted to kindred societies. St. 1877, c. 222, took effect on May 11 of that year. Before then the meeting house itself, by special permission of the Legislature, had been leased to the United States for a post-office and utterly abandoned as a place of religious worship, and hence together with the adjacent unoccupied land had become subject to taxation. *Old South Society* v. *Boston,* 127 Mass. 378. Taxes for the year 1877 had accrued before the enactment of the petitioner's act of incorporation. Yet the whole property was exempted expressly from taxation for that year. It is apparent from this, as well as from the provision of § 1 to the effect that the petitioner might lease the meeting house and land before acquiring title thereto, that the exemption from taxation is not grounded upon ownership by a charitable organization, but upon other considerations. The manifold historic incidents connected with the Old South Meeting House and the stirring scenes enacted within its walls have made it a shrine precious beyond price to every lover

of the Commonwealth and to all who cherish the traditions of liberty under government upon this continent. For reasons of its own the religious society which had owned the building had sold it. It was on the point of being torn down and the land devoted to commercial uses, for which it had become exceedingly valuable. Public-spirited citizens desiring to preserve it as a fountain of patriotic inspiration for future generations raised by subscription a sum of money large in itself, but small compared with the market value of the property. To this end title was taken in the name of Royal M. Pulsifer, and mortgages to the amount of $300,000 were given to secure the balance of the purchase price. It is obvious that the preservation, care and repair of the meeting house as a historical monument under this burden of indebtedness would present a difficult problem.

The extraordinary public interest and popular character of this plan for the preservation of the meeting house is demonstrated by the provisions of §§ 1 and 2 to the effect that the Governor of the Commonwealth, the mayor of the city of Boston, and the presidents of four learned institutions are named among the incorporators, and these, with two elected by the city council of Boston and others chosen by the petitioner, constitute a board of managers; and by the appropriation of $10,000 to the petitioner from the treasury of the Commonwealth, by c. 26 of the Resolves of 1878.

The inference from the grammatical construction of the tax exemption section quoted above is that the property to be acquired by the petitioner is a unit. It is referred to as "said meeting house and land." This evidently means the land more particularly described in § 1 as that "under and adjacent to the same [the meeting house] upon the corner of Milk Street and Washington Street." The exemption is of this unit, but the condition upon which the exemption springs into being and the period for which it endures is " while said meeting-house shall be used" for the charitable purposes set forth in this act, and not while the entire estate shall be so used. Some light is thrown upon the meaning of the tax exemption clause by its course in the two branches of the General Court as manifested by their records. Although the plain meaning of a statute cannot be affected by resort to the proceedings incident to its passage (*Boston & Providence Railroad* v.

*Midland Railroad*, 1 Gray, 340, 366; *Browne* v. *Turner*, 174 Mass. 150, 159; *Boston* v. *Talbot*, 206 Mass. 82, 91), it is permissible to examine records of legislative proceedings to illumine language of doubtful import. *Gardner* v. *The Collector*, 6 Wall. 499. *Blake* v. *National Banks*, 23 Wall. 307, 317, 320. *Holy Trinity Church* v. *United States*, 143 U. S. 457, 463. *Buttfield* v. *Stranahan*, 192 U. S. 470. The original draft of this clause as reported by a committee of the House provided that "said meeting-house and land shall be exempt from taxation;" an amendment added the words "while used for any of the purposes aforesaid," and subsequent amendments inserted after "while" the words "said meeting-house shall be" and appended the special tax exemption for the year 1877. This development of legislative intent shows that a general tax exemption, whether the property was preserved in its original form or not, was not desired, nor was an appropriation of the entire property *in specie* to the purposes of the act thought necessary, but the exemption from taxation of the property, including land and meeting house, was made dependent upon use of the meeting house for the general purpose of the act. The conclusion seems to follow that the tax exemption of the entire property unit persists so long as the meeting house itself is preserved and used for the purposes of the act, but that so long as this dominant design is executed, the adjacent land may be put to other uses not inconsistent therewith, which by yielding revenue may promote the general beneficient end to be accomplished by the act.

A forceful argument against this interpretation is found in the grant of power to the petitioner in § 1, to the effect that the property may be acquired and held "for public, historical, memorial, educational, charitable and religious uses and none other." In other connections this prohibition against any other use than those specified might be words of specific limitation. But it was held in *Burr* v. *Boston*, 208 Mass. 537 (where an essential feature was title in the municipality), that physical appropriation of property to public uses was not essential to exemption from taxation, and that still it might be so stamped with a public purpose as to be exempt from taxation under general principles of tax law although directly put to a private use, so long as the income was applied to the public use.

The governing feature of this statute is expressed in the title to be "to provide for the preservation of the Old South Meeting-House." That the meeting house is the central object of the act appears not only from all the attendant circumstances, but also from each section of the act, and especially from § 3 which authorizes its use by the Commonwealth "for the annual election sermon." The financial difficulties in the way of its preservation were acute. This is apparent from the fact that the $10,000 allowed to the petitioner by c. 26 of the Resolves of 1878, "for the preservation of the Old South Meeting House" when it shall have acquired enough money from other sources to give it with that sum "complete title to said meeting house and the land connected therewith, free from all debt or incumbrance," has not yet become available for the reason that the estate is subject still to mortgage indebtedness. Although a unit of property is described as the subject of acquisition, its exemption from taxation is based upon use of the meeting-house alone for the memorial and other purposes. These considerations incline us to the view that the language quoted from § 1 means that although the property acquired must all be devoted to the uses there specified and to none other, yet, the meeting house being kept and physically appropriated as a public historical memorial, such of the adjacent land as is not reasonably necessary for the preservation of the edifice may be put corporeally to other rational uses not inconsistent with the main purpose provided its income is strictly applied to the charitable ends set forth in the act.

The petitioner contends that the land adjacent to the meeting house would be exempt from taxation in the hands of a purchaser. But this is untenable. The building and land under and adjacent is treated as a unit. It must be retained as a unit in order to remain the subject of all the benefits and immunities conferred by the statute. It is not of much consequence in this connection that it was in private ownership in 1877 and continued to be so until 1890. It was a unit, nevertheless, held for the single regnant purpose of a historical and educational institution and monument.

It follows that the petitioner's second request should have been given. In accordance with the terms of the report, let the entry be

*Judgment for the petitioner for $25,000, with interest from February 26, 1907.*