ARTHUR L. REA & others *vs.* BOARD OF ALDERMEN OF EVERETT.

Suffolk.   November 13, 1913. — May 19, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*License.   Intoxicating Liquors.   Statute.   Mandamus.   Words,* "Shall."

Under St. 1906, c. 421, § 2, as amended by St. 1911, c. 423, providing that "the mayor and aldermen in cities and the selectmen in towns in which said licenses [for the sale of intoxicating liquors] of the first five classes are not granted shall annually in the month of April, grant and issue one or more permits [for the transportation of intoxicating liquors] to become effective on the first day of May following, and to be granted only to a person, firm or corporation regularly and lawfully conducting a general express business," it is the duty of the mayor and aldermen of such a city annually to undertake the investigation of applications for such permits and to grant at least one such permit if an applicant is found who regularly and lawfully is conducting a general express business and whose character is such that he can be trusted to attempt to comply honestly with the terms of the statute.

In considering a contention that the word "shall" as used in a certain statute should have merely a permissive meaning, it is proper for this court to consider the fact, that when the passage of the statute was under discussion in the House of Representatives a motion to substitute the word "may" for the word "shall" was lost.

A writ of mandamus, when it is addressed to a board of public officers charged with a duty that requires the exercise of judgment, does not prescribe the particular action to be taken but merely sets the board in motion to exercise fairly and reasonably the duty imposed upon them by statute.

RUGG, C. J.   This is a petition for a writ of mandamus.*   The petitioners, each of whom is either a person, firm or corporation regularly and lawfully conducting a general express business, severally requested, in writing, that the board of aldermen grant to each a permit to transport spirituous or intoxicating liquors into or in the city of Everett.   The respondents constitute the board of aldermen of that city, in which licenses of the first five classes for the sale of intoxicating liquors are not granted.   A majority of them have taken the position that under no circumstances will they vote to grant a permit either to any one of the petitioners, or to any other person, firm or corporation qualified

---

* Reported with findings of fact by *Braley,* J., for determination by the full court.

to ask for and to receive a permit. The question presented is whether, under such circumstances, the board of aldermen are required to grant a permit for such transportation of intoxicating liquors. The decision depends upon the meaning of the word "shall" in St. 1906, c. 421, § 2, which, as amended by St. 1911, c. 423, is as follows: "The mayor and aldermen in cities and the selectmen in towns in which said licenses of the first five classes are not granted shall annually in the month of April, grant and issue one or more permits under the provisions of this act, to become effective on the first day of May following, and to be granted only to a person, firm or corporation regularly and lawfully conducting a general express business and to no other person, firm or corporation, and every such permit shall specify the residence by street and number (if any) of the holder, and shall be subject to all laws now or hereafter in force relative to the transportation of such liquors."

There is at common law no limitation upon the right to transport intoxicating liquors. The meaning of this statute regulating it must be ascertained in the light of the history of our legislation touching the subject. The present local option license law had its origin in St. 1875, c. 99. That contained no provision respecting the transportation of liquors. The earliest act of this nature was St. 1878, c. 207, whereby was forbidden the bringing of intoxicating liquors into no-license municipalities with intent to sell or having reasonable belief that they were brought there with intent to be sold in violation of law. R. L. c. 100, § 48. Plain and legible marking of packages when delivered to, and the keeping of minute records of their transportation by, a railroad and others regularly and lawfully conducting a general express business, was required by St. 1897, c. 271, now R. L. c. 100, §§ 49 to 53. This statute was said, in *Commonwealth* v. *Intoxicating Liquors,* 172 Mass. 311, at 316, to indicate "that the policy of the Commonwealth is to require that the traffic in liquors in this State shall be open, so that every step shall be exposed to the scrutiny of the authorities, and that the violation of the law may be the more easily detected." Under this statute and as it stood in the Revised Laws, however, anybody except a railroad and those conducting a general express business, lawfully could transport liquor for hire into a no-license municipality, provided it was not to be sold

contrary to law. *Commonwealth* v. *Beck,* 187 Mass. 15. It is common knowledge that thereafter there grew up a class of so called carriers, known as "pony express," under no regulation whatever. To prevent this abuse the Legislature went one step further and required by the St. of 1906, c. 421, a permit by local authorities before one could transport intoxicating liquor for hire into no-license communities, so that such carriers would be compelled by registration to come under the close inspection of public officers. Another step was taken by St. 1907, c. 517, as amended by St. 1910, c. 497, which required all consignors or sellers of intoxicating liquor to be transported into no-license cities or towns, (except by railroad, or steamboat to Martha's Vineyard and Nantucket) to deliver it only to a person or corporation "regularly and lawfully conducting a general express business." This was strengthened by St. 1911, c. 423, which allowed permits to be issued by local authorities for transportation of intoxicating liquor in or into no-license communities only to persons, firms or corporations "regularly and lawfully conducting a general express business." The effect of these statutes was to put all kinds of carrying of intoxicating liquors for hire, in or into no-license places, even though such carriage was wholly within the city or town, under public supervision, and to restrict such carrying to those who transact a general and lawful express business. *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564 579.

This brings us to the close consideration of the statute in question. It is manifest that theretofore the Legislature had not undertaken, since the repeal of the early prohibitory law and the adoption of the policy of local option for regulating intoxicating liquors, to control such use of intoxicating liquors as falls short of drunkenness. The object of the liquor law has been to control only the sale and transportation of intoxicants, not their consumption, and there has been no statute to prohibit the carrying of such liquors into no-license communities. Legislative efforts have been confined to a regulation of such transportation, to the end that illegal sales or keeping for sale may be prevented. *Commonwealth* v. *Mixer,* 207 Mass. 141. The title of chapter 421, St. 1906, is: "An Act to provide for the registration of carriers of intoxicating liquors to or in cities and towns which do not grant

licenses of the first five classes." These words do not indicate a purpose to stop transportation altogether, but rather to regulate it still further. The first section prohibits any transportation for hire, without a permit except by a railroad or street railway. In the light of the previous legislation this section indicates a purpose to make even more public than before the traffic in intoxicating liquors, so that it may be more easily "exposed to the scrutiny of the authorities." Section 2 quoted above is in form mandatory. "Shall," although not a word of inflexible signification, in its popular and common meaning is imperative and mandatory. In *Phillips* v. *Fadden,* 125 Mass. 198, it was said at page 200, respecting a requirement that peace officers "shall without a warrant" take into custody a person found in a state of intoxication in a public place, "It will be observed that the terms of this statute left nothing to the discretion of the officer, but made it his imperative duty to arrest the offender." *West Wisconsin Railway* v. *Foley,* 94 U. S. 100, 103. *In re Burton,* [1903] 2 K. B. 300, 302. *Haseltine* v. *Simpson,* 61 Wis. 427. Instances are to be found where, in order to effectuate the object of the Legislature the word "shall" has been construed as permissive or directory. *Cheney* v. *Coughlin,* 201 Mass. 204. *Rutter* v. *White,* 204 Mass. 59. *Pevey* v. *Aylward,* 205 Mass. 102. *Cairo & Fulton Railroad* v. *Hecht,* 95 U. S. 168. *Lewisburg Bridge Co.* v. *Union & Northumberland Counties,* 232 Penn. St. 255, 269. *Spring Creek Drainage District* v. *Elgin, Joliet & Eastern Railroad,* 249 Ill. 260, 294. But the discussion in each of these decisions shows a general consensus that in its usual sense the word expresses command rather than permission. It is the word naturally employed by the Legislature to convey its positive and compulsory mandate.

We are of opinion that the history of the statutes in this Commonwealth touching the transportation of intoxicating liquors, of which the statute now in question forms a part, does not disclose a legislative purpose to confer upon the officers of no-license municipalities discretionary power to prohibit such transportation for hire by common carriers other than railroad and street railway corporations, but rather to require the issuance of at least one permit for such transportation, provided a reasonably proper person may be found conducting a general express business. If the public welfare requires a further regulation or restriction of

such transportation, it is a matter for the legislative and not for the judicial department of government.

This interpretation is confirmed by the proceedings in the House of Representatives to the effect that a motion to substitute the word "may" for the word "shall" in § 2 of the statute, while it was under discussion before its enactment, was lost. It is pertinent and proper to consider such legislative history of a statute. *Old South Association in Boston* v. *Boston,* 212 Mass. 299, 304, and cases there cited. *Lapina* v. *Williams,* 232 U. S. 78, 90. The deliberate refusal of the General Court to adopt a word which plainly would have conferred discretionary power upon the local boards and officers, in place of one whose natural purport would compel them to grant a permit, is significant of a settled intention to use the imperative word. See *Commonwealth* v. *King,* 202 Mass. 379, 384.

There is nothing inconsistent with this conclusion in *Suburban Light & Power Co.* v. *Aldermen of Boston,* 153 Mass. 200. The petitioner in that case was seeking to locate poles and wires in public streets. Manifestly whatever right it might have in this regard was subject and subordinate to the general uses of the highways for public travel. It would require an unequivocal expression by the Legislature to render the granting of such right compulsory.

The contention of the petitioners that the respondents are required absolutely and without any power of refusal to grant at least one permit, cannot be sustained. The duty imposed upon the respondents as members of the board of aldermen is to issue a permit. But an inherent part of the conception of granting a license or permit is a certain degree of discrimination. *People* v. *Grant,* 126 N. Y. 473. If upon an impartial investigation of the applicants for permits, undertaken with a purpose to comply with the law, the respondents should be of opinion that no one of the applicants was regularly and lawfully conducting a general express business or was of such character that he could not be trusted to comply or honestly to attempt to comply with the terms of the statute, they would not be required to issue a permit. But they must undertake such an investigation with a genuine determination to grant a permit provided there is an applicant who conforms to the requirements of the law.

It is not the function of a writ of mandamus to direct the particular action to be taken, but simply to set the public board in motion to exercise fairly and reasonably the duties imposed by the statute. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162.

*Writ to issue.*

*A. T. Smith,* for the petitioners.
*A. M. Pinkham,* for the American Express Company.
*N. P. Brown,* (*H. H. Newton & E. L. Sweetser* with him,) for the respondents.