JACOB BAILEN *vs.* BOARD OF ASSESSORS OF CHELSEA
& another.

Suffolk.    December 5, 1921. — May 20, 1922.

Present: RUGG, C.J., DE COURCY, CARROLL, & JENNEY, JJ.

*Chelsea.    Municipal Corporations,* Officers and agents.

Under Part II, § 57, of the charter of the city of Chelsea, St. 1911, c. 680, the board
of aldermen have power to remove a member of the board of assessors from office
without a notice or hearing before the expiration of a term of office for which
he had been appointed, and this power is not subject to veto by the mayor.
The veto power given to the mayor of Chelsea over certain acts of the board of
aldermen by § 42 of the charter, St. 1911, c. 680, is confined to legislative acts
of the board and does not affect executive action on their part, such as the
removal or appointment of a member of the board of assessors under § 57.
The mayor of Chelsea has no power to veto the exercise of executive action of the
board of aldermen in the absence of express statutory provision therefor.

PETITION, filed in the Supreme Judicial Court on May 9, 1921,
and afterwards amended, for a writ of mandamus commanding
the respondents, George W. Ford and Charles J. Donahoe, as
members of the board of assessors of the city of Chelsea, to recog-
nize the petitioner as the third assessor for that city and not to
interfere with the petitioner in the performance of his duty as such
assessor, and to proceed, when practicable, with the petitioner
forthwith to perform the field and valuation work for the city
and to do all other like duties required by law; and also command-
ing the respondent Samuel J. Abramovitz to desist from laying
claim to the office of assessor to the exclusion of the petitioner.

The petition was heard by *Braley,* J.   Material facts found by
him are described in the opinion.   Material provisions of St. 1911,
c. 680, Part II, the charter of the city of Chelsea, are as follows:

"Section 3.   The government of the city and the general man-
agement and control of all its affairs shall be vested in a single
officer, to be called the mayor, and in a legislative body, to be
called the board of aldermen, except, that the general manage-
ment and control of the public schools of the city and of the prop-
erty pertaining thereto shall be vested in a school committee."

"Section 42.   Every ordinance, order, resolution or vote of the

board of aldermen, except those relating to matters of procedure or to the election of officers, shall be presented to the mayor by the clerk of the board within forty-eight hours after its passage, Sundays and legal holidays excepted. If the mayor approves it, he shall sign it, and it shall then be in force; if he disapproves it, he shall return it, with his objections in writing, to the board, which shall enter the objections at large on its records and again consider it; and if two thirds of the members of the board vote to pass it, notwithstanding the mayor's objections, it shall be in force; but in all cases the vote shall be by yeas and nays. Any such ordinance, order, resolution or vote shall be in force if it is not returned by the mayor within ten days after it was presented to him."

"Section 51. The mayor shall appoint, subject to the approval of the board of aldermen, a chief of police, a city engineer, who shall be superintendent of streets and sewers, who shall have the powers of surveyors of highways and all the powers of road commissioners not herein otherwise conferred; a chief engineer of the fire department; a superintendent of public buildings, and a superintendent of fire alarms. Every administrative officer so appointed shall, unless sooner removed, hold office until his successor is appointed and qualified. Any officer so appointed under this section may be removed by the mayor, for such cause as he shall deem sufficient and shall assign in writing in his order of removal, and the removal shall take effect upon the filing of the order in the office of the city clerk and the service of a copy of such order upon the officer removed either personally or at his last or usual place of residence. The city clerk shall keep such order on file and subject to public inspection."

"Section 57. The board of aldermen shall appoint, may remove and shall fix the salary, if any, of all administrative officers of the city, except as is otherwise provided herein. There shall be the following administrative officers, who shall perform the duties by law prescribed for them, respectively, and such further duties, not consistent with the nature of their respective offices and with general laws, as the board of aldermen may prescribe; a city clerk; a city treasurer, who may be collector of taxes; a city auditor; a city solicitor; a city messenger; a city physician; a city engineer, who shall be superintendent of streets and sewers, and who shall have the powers of surveyors of highways and all the

powers of road commissioners not herein otherwise conferred; a board of assessors, consisting of three persons; five assistant assessors, one from each ward; a water commissioner; a park commissioner; a board of registrars of voters, consisting of three persons; a board of trustees of the public library, consisting of six persons; a board of trustees of the soldiers' burial lot, consisting of three persons; a board of commissioners of sinking funds, consisting of three persons; a board of overseers of the poor, consisting of three persons; a board of health, consisting of three persons, one of whom shall be a physician; a superintendent of public buildings, who shall be inspector of buildings; a superintendent of fire alarms, who shall be inspector of wires; a clerk of committees; a chief of police; a chief engineer of the fire department."

The single justice ordered the petition dismissed and at the request of the petitioner reported the case to the full court for determination.

*S. L. Bailen,* for the petitioner.

*S. R. Cutler,* for the respondents.

DE COURCY, J.   The petitioner was duly appointed a member of the board of assessors, for a period of three years from February 6, 1920. On April 4, 1921, the board of aldermen voted that said Bailen "be removed from office on the ground of incompetency and for the best interests of the city;" and at the same meeting the respondent Abramovitz was elected in his place. It is admitted, for the purposes of this case, that no notice or hearing was given to the petitioner; and that he always discharged the duties of his office faithfully and without criticism.   The main question raised by the report is, whether the attempted removal was ineffectual, because made without notice or hearing.   The answer depends upon the construction of the Chelsea charter St. 1911, c. 680, Part II, § 57, which provides that "The Board of Aldermen shall appoint, may remove and shall fix the salary, if any, of all administrative officers of the city."   An assessor admittedly is such an officer.

It was said in *Attorney General* v. *Stratton,* 194 Mass. 51, 53: "Whatever the rule may be in reference to municipal corporations in other parts of the country, we are of opinion that, in the cities and towns of Massachusetts, there is no power to remove public officers except that which is given by the statutes."   Many of our

statutes require notice, hearing, or statement of cause or reasons as conditions precedent to the exercise of the power of removal. *Ransom* v. *Boston,* 192 Mass. 299. *Murphy* v. *Mayor of Boston,* 220 Mass. 73. *Tucker* v. *Boston,* 223 Mass. 478. *Thomas* v. *Municipal Council of Lowell,* 227 Mass. 116. Where the power is given to remove "for cause," a removal is not authorized without notice and hearing, even though the statute does not so provide in terms. *Ham* v. *Boston Board of Police,* 142 Mass. 90. And see *Ayers* v. *Hatch,* 175 Mass. 489, 492; *Hogan* v. *Collins,* 183 Mass. 43. Where, however, a public officer is appointed during pleasure, or where the power of removal is discretionary, the power may be exercised without notice or hearing. For instance in *O'Dowd* v. *Boston,* 149 Mass. 443, it was held that such discretionary power existed under a statute authorizing the board of directors of the East Boston Ferries to remove subordinates "for such cause as they may deem sufficient and shall assign in their order for removal." *Lacy* v. *Selectmen of Winchendon,* 240 Mass. 118, involved the right of the selectmen of a town to remove the superintendent of streets. The statute as originally phrased provided that he might be removed "when in the judgment of the selectmen the best interests of the town so requires." It was held that a removal without hearing was justified. See also *Knowles* v. *Boston,* 12 Gray, 339; *Chandler* v. *Lawrence,* 128 Mass. 213; *Williams* v. *Gloucester,* 148 Mass. 256.

The statute under consideration gave to the board of aldermen a general power to appoint and remove, without more. The contention of the petitioner is that under such a statute an officer, at least where he holds for a definite term, cannot be removed without notice of charges and a hearing. While there is some authority for this contention, it was decided to the contrary in this Commonwealth in the case of *Attorney General* v. *Donahue,* 169 Mass. 18. There the officer held office for a definite term and was removed before its expiration and without a hearing by the city council. The statute provided "The city council may, by a two thirds vote in each branch, voting by yeas and nays, remove any of said officers without the consent of the mayor." The removal was held to be valid. See also *Commonwealth* v. *Harriman,* 134 Mass. 314. This decision is in accord with leading authorities elsewhere. In *Eckloff* v. *District of Columbia,* 135

U. S. 240, a lieutenant of police for years was removed from office
by the commissioners of the District of Columbia without written
charges, notice or hearing. The statute empowered the commis-
sioners "to abolish any office, to consolidate two or more offices,
reduce the number of employés, remove from office and make
appointments to any office under them authorized by law." The
court said, page 241, "If this were all the legislation, there would
be no question, for the grant of a general power to remove carries
with it the right to remove at any time or in any manner deemed
best, with or without notice." In *Townsend* v. *Kurtz*, 83 Md. 331,
an insurance commissioner having a definite term, appointed under
a statute which provided that he "shall hold his office during the
term for which he is appointed, or until his successor is appointed
and qualified, unless sooner removed by the governor, treasurer
and comptroller," was removed without notice or hearing. After
a long and illuminating discussion reviewing many cases, the
opinion concludes in these words: "When the statute has given
the appointing power authority to remove the appointee, although
originally appointed for a definite term of years, it can be exer-
cised. The point of divergence between the cases is as to how
the removal can be accomplished when the law granting the power
is silent on the subject. On the one side it is said that in such
case it must be implied that the power can only be exercised for
cause which admittedly requires notice, hearing, etc., while the
other line of cases refuses to permit the court to interpolate words
that the Legislature did not see fit to use." The removal was
held valid. In *Sweeney* v. *Stevens,* 17 Vroom, 344, the statute
provided that the board of chosen freeholders might appoint a
jailor for the term of five years "but such jailor may at any time
be removed from office by a vote of two-thirds of all the chosen
freeholders of said county for the time being." It was held that
no notice, hearing or statement of cause was required. In the
opinion it was said: "This language [of the statute] is plain, and
seems clearly to authorize the removal of the defendant in the
mode in which it has been attempted. We have been referred to
no judicial decision, and are aware of none, which would justify
our engrafting upon it any provisions to defeat the power that it
appears to confer. The Legislature, in creating the office, had
the right to provide for its vacation in such manner as they saw

fit, and in ascertaining what the manner is, we must take their language in its ordinary import. . . . The statute commits the tenure of this office to the discretion of two-thirds of the members of the board, and when they determine to remove an incumbent, *stat voluntas pro ratione.*" To the same effect see *People* v. *Board, of Fire Commissioners of New York,* 73 N. Y. 437; *State* v. *Somers,* 35 Neb. 322; *Kimball* v. *Olmsted,* 20 Wash. 629.

It is further contended by the petitioner that even if the aldermen had power to remove him without a hearing, their vote of removal was subject to the veto power conferred on the mayor by § 42 of the city charter, and was vetoed. It seems to us from the language of this section that the intent of the Legislature was to confine the veto power to legislative acts of the aldermen, in accordance with the general rule. See cases collected in note 15 Ann. Cas. 1066. The powers to appoint and to remove officers are in their nature executive. *Murphy* v. *Webster,* 131 Mass. 482, 488. While the Chelsea charter by § 51 gives the mayor exclusive power to appoint and remove certain city officers, similar executive power is conferred on the board of aldermen by § 57, with reference to the appointment and removal of another group of administrative officers. The mayor has no power to veto the exercise of such executive action of the board of aldermen in the absence of express language. See *McMinn* v. *Mayor of Cambridge,* 225 Mass. 104. This § 42 on the contrary expressly excludes from its operation "Every ordinance, order, resolution or vote" of the board of aldermen "relating to matters of procedure or to the election of officers." If we assume that it has any application to the election of an assessor, it would impliedly exclude also the mayor's right to veto the removal of an assessor; because the vote appointing his successor would operate as a removal of the petitioner. *Williams* v. *Gloucester,* 148 Mass. 256.

The single justice rightly declined to rule as matter of law that a writ of mandamus should issue. His order dismissing the petition must be affirmed.

*So ordered.*